In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3496

United States of America,

Plaintiff-Appellee,

v.

Jesse J. Johnson,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 142-1--Elaine E. Bucklo, Judge.

Argued April 5, 2002--Decided May 14, 2002


   Before Flaum, Chief Judge, and Posner and
Rovner, Circuit Judges.

   Flaum, Chief Judge.  A federal grand
jury indicted Defendant-Appellant Jesse
J. Johnson for possession of crack
cocaine with intent to distribute in
violation of 21 U.S.C. sec. 841(a)(1),
possession of a firearm in furtherance of
drug trafficking in violation of 18
U.S.C. sec. 924(c)(1), and possession of
a firearm by a convicted felon in
violation of 18 U.S.C. sec. 922(g)(1).
Johnson initially pled not guilty and
moved to quash a search warrant that led
to the evidence against him. After the
district court denied the motion to
quash, Johnson entered into an agreement
with the government, pled guilty to Count
I of the indictment (possession with
intent to distribute), and reserved the
right to appeal the district court's
denial of his motion to quash. On appeal,
Johnson challenges that ruling, as well
as several sentencing determinations. For
the reasons stated herein, we affirm.

I.  Background

   On February 15, 2000, Officer David
Jackson of the Joliet Police Department
appeared before Associate Judge Daniel
Rozak of the Will County Circuit Court to
apply for a warrant to search Johnson's
person, residence and automobile. In his

application, Officer Jackson recited his experience as a police officer and described the general nature of his job responsibilities with the Metropolitan Area Narcotics Squad ("MANS"). Officer Jackson also included information obtained from a confidential informant ("CI") to whom Jackson referred as "Pat Doe" to maintain the CI's anonymity. The CI informed Jackson that Jesse J. Johnson, a black male, was manufacturing and selling cocaine. Officer Jackson asserted that the CI had "established reliability," and then relayed the facts that the CI had provided to him:

Pat Doe knows Jessie J. Johnson, and has been inside the residence located at 505 Amhurst [sic], Lockport, Illinois. Within the past 14 days, Pat Doe observed Jessie J. Johnson to have a quantity of a white chunky substance, suspected cocaine, inside this residence. Pat Doe knows that Jesse J. Johnson. [sic] intends on selling this cocaine. Pat Doe is familiar with cocaine because Pat Doe in the past has purchased, packaged, and sold cocaine. Pat Doe is familiar with the color, texture, and smell of cocaine from previous experience. Pat Doe also knows that Jesse J. Johnson. [sic] referred to this substance as being cocaine and mentioned that heintends to sell this cocaine as soon as possible to make a financial profit.

Officer Jackson corroborated the fact that Johnson was a black male individual born on the date specified by the CI. Officer Jackson also observed Johnson operate one automobile and determined that a second vehicle parked outside the residence at 505 Amherst was registered to Johnson./1

Both Officer Jackson and the CI appeared before Judge Rozak, at which time the CI took an oath and signed an affidavit mirroring the details contained in Officer Jackson's application. Despite the CI's appearance before Judge Rozak, the record is unclear regarding whether the Judge asked the CI any questions, whether the CI testified before the court, or whether Judge Rozak observed the CI's demeanor when swearing to the facts contained in the affidavit. Based upon the facts in the affidavit, Judge Rozak found probable cause and issued a warrant authorizing law enforcement to

search Johnson's person, the residence at 505 Amherst and two vehicles. On February 18, 2000, Officer Jackson and other law enforcement officials executed the search warrant and found 544 grams of cocaine, approximately 164 grams of crack cocaine, a baking dish, a scale, and a loaded semi-automatic pistol on the top shelf of a utility closet in Johnson's home.

A federal grand jury returned a three-count indictment against Johnson, who initially pled not guilty and filed a motion to quash the search warrant and the evidence that resulted from the search. Johnson argued that Judge Rozak issued the warrant despite the absence of probable cause. After briefing and argument, the district court denied Johnson's motion. The district court stated that the CI's first-hand observations were sufficient to support a finding of probable cause. The district court also noted that the presence of the CI before the issuing magistrate, and the opportunity to testify, were sufficient indicia of reliability to foreclose concerns regarding the veracity of the CI's information. As a result, the district court held that the CI had provided reliable information that supported a finding of probable cause. Subsequent to the district court's ruling, Johnson entered into a plea agreement with the government whereby he pled guilty to Count I of the indictment (possession with intent to distribute) and reserved his right to appeal the district court's denial of his motion to quash./2

Johnson's plea agreement stated that on "February 18, 2000, the defendant knowingly and intentionally possessed about 544 grams of cocaine, about 164 grams of 'crack' cocaine, a baking dish, a scale, and a loaded semi-automatic pistol that were located on the top shelf of a utility closet in the lower floor of his residence, 505 Amherst, Lockport Illinois." At the plea hearing, the government recited the facts contained in the plea agreement, and Johnson affirmatively stated that the facts were true and that he possessed "cocaine base and cocaine powder" when the officers searched his residence on February 18, 2000. When asked by the district court about the firearm discovered during the search, Johnson admitted that "there was

a gun there." As a result, the district court enhanced Johnson's offense level for possession of crack cocaine (U.S.S.G. sec. 2D1.1(c)), as well as for possession of a firearm during a drug crime (U.S.S.G. sec. 2D1.1(b)(1)).

The final issue at sentencing concerned the probation officer's recommendation that the district court sentence Johnson based upon a Criminal History of IV and a total offense level of 33 points. Despite a plea agreement to the contrary, the probation officer suggested the addition of three points to Johnson's criminal history because Johnson received traffic supervision for driving on a revoked license (adding one point), and because Johnson committed the present offense while on traffic supervision (adding two more points). Johnson argued before the district court that the three-point adjustment overstated his criminal history, and he urged the district court to depart downward. The district court refused to do so, noting that driving on a revoked license was a "serious" charge. The district court stated:

I don't think it overstates the seriousness of the offense to say that someone who has violated the driving laws and lost their license and then is caught driving receives a term of supervised release, and therefore, that is a criminal justice sentence of sorts, and one of the conditions, at least in terms of federal law, is that if you commit a crime while under that sentence, you are going to be held responsible for that as if you wereunder supervision for some other offense.

The district court sentenced Johnson to 188 months in prison, which reflects the low end of the sentencing range, and Johnson appeals.

II.  Discussion

   A.  Denial of Motion to Suppress

   Johnson first argues that the district court should have granted his motion to quash because Judge Rozak issued the search warrant despite the absence of probable cause. Specifically, Johnson contends that the government was unable to establish the reliability or veracity of the CI because (1) the CI provided few

details surrounding his interaction with the defendant, (2) the government corroborated only obvious details of the CI's information that did not support the court's finding of reliability, and (3) although the CI appeared before the issuing magistrate, there is no evidence in the record to suggest that Judge Rozak actually questioned the CI.

We review determinations of probable cause de novo. Ornelas v. United States, 517 U.S. 690, 698 (1996). However, we take great care "to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Id. In doing so, we are mindful that probable cause is not a precise legal concept, but rather a "commonsense, nontechnical" standard that deals with "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)). It is an inquiry that requires us to examine the "totality of the circumstances," Ornelas, 517 U.S. at 696; Gates, 462 U.S. 213, 230-39, and to recognize that a "search warrant affidavit establishes probable cause only when it 'sets forth facts sufficient to induce a reasonable prudent person to believe that a search thereof will uncover evidence of a crime.'" United States v. Jones, 208 F.3d 603, 608 (7th Cir. 2000) (quoting United States v. McNeese, 901 F.2d 585, 592 (7th Cir. 1990)).

Examining a finding of probable cause based upon information provided by a CI presents unique challenges, such as determining whether the government has established the CI's reliability, veracity and basis of knowledge. When the credibility of a CI is at issue, our prior cases instruct us to consider several factors, such as the informant's personal observations, the degree of detail given, independent police corroboration of the CI's information, and whether the informant testified at the probable cause hearing. Jones, 208 F.3d at 608 (citing United States v. Singleton, 125 F.3d 1097, 1103-04 (7th Cir. 1997)); United States v. Pless, 982 F.2d 1118, 1125 (7th Cir. 1992). No

single issue is dispositive; "a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." United States v. Brack, 188 F.3d 748, 756 (7th Cir. 1999). We emphasize these factors as a means of examining the CI's reliability and whether, based upon the facts provided by the CI, a substantial basis existed for concluding that law enforcement officials would discover evidence of a particular crime in a particular place. Gates, 462 U.S. at 238-39.

Although this case presents a close question, we believe that the factual record before the state court judge was sufficient to support a finding of probable cause and the issuance of the search warrant. It is true that the CI did not provide the level of specificity and detail that would have removed all ambiguity from the probable cause inquiry, but we cannot examine the facts provided by the CI in isolation. Instead, we must evaluate "the totality of the circumstances," Gates, 462 U.S. at 234, and under that standard, the facts supported the issuance of the search warrant. Here, the CI provided first-hand observations of illegal activity, offered statements against his penal interest, and appeared before the magistrate to allay any concerns regarding his veracity. Moreover, the investigating officer corroborated the fact that at least one of the vehicles parked in front of Johnson's home belonged to the defendant. We discuss below why each of these facts supported the CI's reliability and the issuing magistrate's finding of probable cause.

Foremost in our analysis is the fact that the CI observed first-hand the defendant's illegal conduct, and we have often repeated that first-hand observations by a CI support a finding of reliability. See United States v. Lloyd, 71 F.3d 1256, 1263 (7th Cir. 1995); United States v. Buckley, 4 F.3d 552, 555 (7th Cir. 1993); see also Gates, 462 U.S. at 234 ("even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the

case."). Here, there is no dispute that the CI provided direct observations of Johnson's illegal conduct. The CI informed the investigating officer that he knew Johnson, that he was present in Johnson's residence at 505 Amherst, that he observed cocaine, and that he knew Johnson intended to sell the cocaine. While the facts provided by the CI are somewhat cursory, they establish the CI's basis of knowledge and support the CI's reliability. This is particularly true because the CI provided a direct link between the illegal activity observed and the place to be searched. See United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2000) (affidavit insufficient to establish probable cause where CI's information failed to link alleged drug manufacturing to location to be searched).

We also note that by making statements against his penal interest the CI offered another indicium of reliability. See United States v. Harris, 403 U.S. 573, 583-84 (1970) ("Admissions of a crime . . . carry their own indicia of credibility--sufficient at least to support a finding of probable cause to search."); Jones, 208 F.3d at 605-06 (CI's admission that she had purchased approximately 12 pounds of marijuana from defendant on three previous occasions supported finding of reliability); United States v. Carmichael, 489 F.2d 983, 987 (7th Cir. 1973) (reliability of informant "inheres in his statements against interest."). In this case, the CI admitted prior drug distribution and use. The CI's affidavit stated that he had "purchased, packaged, and sold cocaine," and that the CI was "familiar with the color, texture and smell of cocaine from previous experience." This information added to the court's finding of reliability.

Beyond the information provided by the CI, two additional considerations exist that support the magistrate's issuance of the search warrant. The first concerns the investigating officer's corroboration of at least one detail contained within the CI's affidavit: the officer learned that an automobile parked outside the residence at 505 Amherst was registered to Johnson. See Jones, 208 F.3d at 609 (officer corroborated as much of CI's information as possible before seeking a warrant). The second is that the CI

appeared before Judge Rozak and swore an additional affidavit mirroring the details provided to the investigating officer. In Jones, we upheld the issuance of a search warrant that was based upon information from a single CI who personally appeared before the issuing magistrate. Id. at 605-06. In that case, we recognized that

when a CI accompanies the officer and is available to give testimony before the judge issuing the warrant, his presence adds to the reliability of the information used to obtain the warrant, because it provides the judge with an opportunity to assess the informant's credibility and allay any concerns he might have had about the veracity of the informant's statements.

Id. at 609; see also Lloyd, 71 F.3d at 1263; United States v. Causey, 9 F.3d 1341, 1343-44 (7th Cir. 1993). Johnsonasserts that while the CI may have appeared before Judge Rozak, the record is devoid of any evidence that the issuing magistrate actually questioned the CI. However, the same was true in Lloyd, where the CI was present before the judge, but there is no record that he actually testified. We agree with Johnson that an on-the-record exchange between CI and issuing magistrate would further buttress a finding that a CI is reliable, but we decline to mandate this in every case. As Lloyd recognizes, the presence of the CI and opportunity to be questioned are themselves indicia ofreliability because they eliminate some of the ambiguity that accompanies an unknown hearsay declarant. The mere presence of the CI allows the issuing judge to confront the CI if necessary./3

   In sum, all of these factors support a finding of probable cause. The CI provided less than comprehensive details regarding his observation of Johnson's illegal conduct. However, other considerations--including the CI's statements against his interest and his presence before the issuing magistrate-- sufficiently bolstered the CI's credibility in this case. Accordingly, the district court did not commit error in denying Johnson's motion to quash the search warrant.

B. Enhancement for Possession of Crack Cocaine

Johnson next maintains that the district court erred by not requiring the government to prove by a preponderance of the evidence that Johnson possessed crack cocaine as opposed to powder cocaine. In response, the government argues that Johnson waived any challenge to this issue. Waiver is the "intentional relinquishment or abandonment of a known right," United States v. Valenzuela, 150 F.3d 664, 667 (7th Cir. 1998), and represents "the manifestation of an intentional choice . . . ." United States v. Cooper, 243 F.3d 411, 416 (7th Cir. 2001). Waiver is distinct from forfeiture, which is an accidental or negligent omission, or "an apparently inadvertent failure to assert a right in a timely fashion." Id. While we review forfeited issues for plain error, a waived issue leaves no error and extinguishes all appellate review. Id. at 415.

When Johnson first raised the possibility of contesting the finding of crack cocaine in the district court, the following colloquy took place between Johnson, the district court and the government:

THE DEFENDANT:  Okay. One question, Your Honor. Is my sentencing, can I appeal [the finding of crack cocaine] as far as on appeal if I have any appeal issues? Would that be a problem?

THE COURT:  That depends on your plea agreement as well.

THE GOVERNMENT:  Yes, he would be able to, Your Honor. There is no appellate waiver, and, in fact, he reserved, it was a conditional plea, so he reserved some of the suppression issues as well.

Tr. of Proceed., July 20, 2001 at 15. We would be troubled with the government's assertion of waiver had subsequent events not intervened. Immediately following the colloquy at which the prosecutor informed Johnson that he could appeal the issue, the district court offered to continue the proceedings until Johnson had the opportunity to speak with counsel. The district court then held another hearing

several weeks later. At that time, the district court inquired whether Johnson intended to dispute the district court's finding that he possessed crack cocaine. Johnson's counsel responded, "We are not challenging the issue of crack, Judge." Tr. of Proceed., Aug. 14, 2001 at 2-3. This statement constitutes an affirmative waiver and reflects precisely why the intentional relinquishment of a right forecloses appellate review. By agreeing not to contest the crack/powder cocaine distinction before the district court, Johnson precluded the court from establishing on the record the factual justifications that supported its decision. We are unable to find that the district court erred on an issue that Johnson never challenged. Accordingly, we hold that Johnson waived the issue and may not raise it on appeal.

Even if we were to consider the merits of Johnson's claim, the written plea agreement Johnson signed uses the terms "crack" and "cocaine base" interchangeably. Indeed, Johnson pled guilty to possessing "164 grams of cocaine base, commonly known as 'crack' cocaine." Besides further undercutting Johnson's claim of the absence of waiver, these admissions--coupled with his statements during several status hearings--provide ample basis from which the district court could conclude that Johnson possessed crack cocaine. See United States v. Benjamin, 116 F.3d 1204, 1207 (7th Cir. 1997); United States v. Wade, 114 F.3d 103, 105 (7th Cir. 1997).

C. Enhancement for Possession of a Firearm

Johnson contends that the two-point enhancement for possession of a firearm during the commission of a drug offense was error. Johnson admits that the search of his residence unearthed both drugs and a firearm; however, he submits that there was no evidence to show that he actually possessed the gun, or that he used it in the commission of the drug offense. Johnson's purported explanation regarding the presence of the gun in his home was that the firearm belonged to his wife's friend, who asked the Johnsons to store the gun while she traveled to Georgia.

U.S.S.G. sec. 2D1.1(b)(1) provides for

a two-point enhancement if the defendant possessed a "dangerous weapon (including a firearm)" during the commission of a drug offense. The enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S. Sentencing Guidelines Manual sec. 2D1.1 application note 3. As an example, the Guidelines describe an "unloaded hunting rifle in the closet." Id. In applying sec. 2D1.1 (b)(1), we have emphasized repeatedly that the government bears the initial burden of proving that the defendant possessed a firearm. United States v. Bjorkman, 270 F.3d 482, 492 (7th Cir. 2001). The government adequately met that burden in this case. Law enforcement officers discovered a loaded semi-automatic pistol in the top shelf of a utility closet in Johnson's home, the same location where officers also found 544 grams of cocaine and 164 grams of crack cocaine. In addition, at the plea colloquy, Johnson admitted as true certain facts recited by the prosecutor, including the fact that the Ruger 9 mm handgun with attached laser sighting device was located next to the narcotics. Johnson also responded to an inquiry from the district court by stating, "Yes, there was a gun there." Tr. of Proceed., Mar. 30, 2001 at 16. We have recognized consistently that the proximity of a weapon to narcotics provides the necessary factual support to warrant the enhancement. See United States v. Zehm, 217 F.3d 506, 517 (7th Cir. 2000); United States v. McClinton, 135 F.3d 1178, 1193 (7th Cir. 1998).

Once the government meets its initial burden, the defendant must demonstrate that it is "clearly improbable" that the weapon was connected with the drug offense. Bjorkman, 270 F.3d at 492. The relationship (or lack of one) between the weapon and the underlying offense amounts to a factual assessment, so our review of the district court's determination is for clear error. See United States v. Vargas, 116 F.3d 195, 197 (7th Cir. 1997). In this case, Johnson asserted that the firearm belonged to his wife's friend. However, we are unable to conclude that the district court erred by not affording Johnson's self-serving assertion presumptive weight. See United States v. Chandler, 12 F.3d 1427, 1435 (7th Cir. 1994) (enhancement for possession of

firearm was proper where the evidence contradicted defendant's assertions). In short, Johnson's evidence fails to meet the "clearly improbable" standard set forth in the Guidelines, and we affirm the district court's application of sec. 2D1.1(b)(1).

## D. Refusal to Depart Downward for Acceptance of Responsibility

Finally, Johnson argues that the district court abused its discretion by not reducing Johnson's criminal history level because the three-point enhancement for traffic supervision overstated Johnson's criminal history. When Johnson initially accepted the government's plea agreement, both the government and the defendant calculated four criminal history points, resulting in criminal history category III. However, the probation officer prepared a pre-sentence report that suggested enhancements for driving on a revoked license (adding one point) and for committing the current offense while on traffic supervision (adding two points). These enhancements increased Johnson's criminal history category to IV and raised the appropriate sentencing range. Johnson moved the district court to depart downward, arguing that the additional points overstated his criminal history. Although the district court was sympathetic to Johnson's argument, it refused to depart, stating:

I don't think it overstates the seriousness of the offense to say that someone who has violated the driving laws and lost their license and then is caught driving receives a term of supervised release, and, therefore, that is a criminal justice sentence of sorts, and one of the conditions, at least in terms of federal law, is that if you commit a crime while under that sentence, you are going to be held responsible for that as if you were under supervision for some other offense.

Accordingly, the district court accepted the recommendations of the PSR.

A defendant who contests a district court's refusal to depart downward faces an uphill battle because we review such determinations only in the narrowest

circumstances. A defendant can challenge the district court's departure decisions only if he shows that the district court "misunderstood or misapplied the law, because when a district court recognizes its authority to depart under the guidelines but in an exercise of its discretion chooses not to do so, an appellate court lacks jurisdiction to review that decision." United States v. Thomas, 181 F.3d 870, 873 (7th Cir. 1999); United States v. Wilson, 134 F.3d 855, 869-70 (7th Cir. 1998). Nothing in the district court's comments or in John son's brief suggests that the court misunderstood its discretion to depart downward. As a result, we lack jurisdiction to consider the merits of Johnson's claim, United States v. Atkinson, 259 F.3d 648, 653 (7th Cir. 2001), and we affirm the district court's decision not to depart downward.

III. Conclusion

For the foregoing reasons, we AFFIRM Johnson's conviction and sentence.

FOOTNOTES

/1 While the application for search warrant and the search warrant itself refer to a residence at 505 Amhurst, the government states that Johnson's home is located at 505 Amherst. We rely on the later spelling and note that the inconsistencies do not affect resolution of this appeal.
/2 See Federal Rule of Criminal Procedure 11(a)(2), which allows a defendant to "enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion."

/3 We do not mean to suggest that the appearance of the CI before the magistrate is sufficient to establish probable cause in every case. Rather, it is an additional factor a court should consider when examining the totality of the circum-stances.