UNITED STATES of America, Plaintiff–Appellee,

v.

Loneta S. CARTER, Defendant–Appellant.

No. 03–3462.

United States Court of Appeals, Seventh Circuit.

Submitted June 24, 2004.

Decided June 25, 2004.

ment is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See*

Fed. R.App. P. 34(a)(2).

**34**

John G. McKenzie, Office of the United States Attorney, Rockford, IL, for Plaintiff–Appellee.

Loneta S. Carter, Adelanto, CA, Defendant–Appellant Pro Se.

Before CUDAHY, POSNER, and WILLIAMS, Circuit Judges.

### ORDER

Loneta Carter pleaded guilty to fourteen counts of wire fraud, *see* 18 U.S.C. § 1343. She was sentenced to a total of 60 months of imprisonment and 3 years of supervised release and ordered to pay $1400 in assessments and $1,529,755 in restitution. Carter filed a notice of appeal, but her appointed counsel now seeks to withdraw under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), because he is unable to find a nonfrivolous issue for appeal. Pursuant to Circuit Rule 51(b), Carter was invited to respond to her counsel's motion to withdraw, but she declined. We limit our review of the record to the potential issues identified in counsel's facially adequate brief. *See United States v. Tabb*, 125 F.3d 583, 584 (7th Cir.1997). Because we agree with counsel that an appeal on the potential issues would be frivolous, we grant the motion to withdraw and dismiss the appeal.

From January 1998 until November 2000, Carter ran a fraudulent investment scheme in which she established an entity named Nevis Investors, Ltd., a purported "investment club." She told potential investors that she was a certified public accountant and that she had a wealthy client who was seeking others to pool their funds to make offshore trades. Carter misrepresented that the investors would receive high rates of return and that she would personally guarantee their principal with a parcel of property worth $40 million. Car-

ter had her investors wire transfer their funds from Illinois to bank accounts that she controlled in Utah and Nevada. In order to facilitate her scheme and delay detection, Carter sent statements to investors falsely representing large profits and used money provided by new investors to repay past investors. Instead of investing the money as promised, Carter used it to pay for her personal expenses. In 1999 in response to a complaint from an investor, the Utah Department of Commerce issued a Stipulation and Consent Order barring Carter from offering unregistered securities and from offering to sell any securities unless she was licensed in Utah as a broker-dealer or the agent of a broker-dealer. At sentencing the district court found that Carter had violated the Utah order.

■ Counsel first considers challenging the sentencing court's decision to increase Carter's offense level by two based on the court's finding that she violated the Utah Stipulation and Consent Order. *See* U.S.S.G. § 2F1.1(b)(4) (redesignated as § 2B1.1(b)(7)(C) effective November 1, 2001). The guidelines provide a two-level increase if the offense involved a "violation of any prior, specific judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines," *id.*, and in the presentence report the probation officer recommended applying this adjustment to Carter. Counsel asserts that the record is ambiguous concerning whether Carter violated the Utah administrative order by continuing to operate in Utah after the date of the order, but recognizes that Carter never argued at sentencing that she did not violate the order. She did argue that applying this upward adjustment along with U.S.S.G. § 2F1.1(b)(6) would amount to "double-counting," but she never challenged the probation officer's assertion or the court's finding that she violated the Utah order.

When asked whether Carter had any other objections to the sentencing recommendation than the ones she had already made, Carter said that she did not. Because she therefore waived a challenge to the court's determination that she violated the order, *see United States v. Reyes*, 365 F.3d 565, 567 (7th Cir.2004); *United States v. Walton*, 255 F.3d 437, 442 (7th Cir.2001); *United States v. Staples*, 202 F.3d 992, 995 (7th Cir.2000), we would be precluded from reviewing the issue on appeal, *Reyes*, 365 F.3d at 567.

■ Counsel next considers arguing that the court engaged in impermissible "double-counting" when it applied both the two-level increase for violating the Utah order, U.S.S.G. § 2F1.1(b)(4), and another two-level increase under section 2F1.1(b)(6)(A) (redesignated as § 2B1.1(b)(8)(A) effective November 1, 2001). Section 2F1.1(b)(6) has three subsections each providing a different basis for the adjustment. Subsection A applies if the defendant relocated to another jurisdiction to evade authorities. Subsection B applies if a substantial part of the scheme was committed outside the United States. Subsection C applies if the offense otherwise involved sophisticated means. The probation officer recommended that the adjustment was appropriate in Carter's case for any of the three bases, but at sentencing Carter argued only that subsection A was inappropriate in her case because it would overlap with the adjustment she received for violating the Utah order. Carter waived any argument to the adjustment by failing to challenge the probation officer's contention that it was warranted for either of the reasons in subsection B or C. And even if our review were for plain error, it would be frivolous to argue that continuing to operate the scheme in Utah and later relocating the scheme to Nevada are not separate acts.

■ Counsel next considers arguing that the court erred in giving Carter an upward adjustment because she abused a position of trust to commit her offense. *See* U.S.S.G. § 3B1.3. Carter objected to the adjustment at sentencing, arguing that she did not abuse a position of trust any more than inherently necessary to commit wire fraud. But the court concluded that Carter falsely represented to her victims that she was a CPA and that she was registered to sell securities, and that these representations facilitated her scheme. She also represented to her victims that she was experienced in making off-shore trades. Even though Carter was not actually a CPA or registered securities dealer, the adjustment still applies if she held herself out as such. *See id.* § 3B1.3, cmt. (n.2); *United States v. Frykholm,* 267 F.3d 604, 612–13 (7th Cir.2001). Because we have held that misrepresenting one's experience as an investor, *Frykholm,* 267 F.3d at 612, or maintaining wide discretion to act on behalf of others, *United States v. Davuluri,* 239 F.3d 902, 908 (7th Cir.2001), are activities that warrant the adjustment, we agree with counsel that an appeal on this basis would be frivolous.

Counsel next considers challenging the court's refusal to grant Carter a downward departure on either of the five bases she proposed—that she had suffered from diminished mental capacity at the time of the offense, that a shorter prison sentence would make it easier for her to make restitution, that she would be unusually susceptible to abuse in prison as an older woman, that she was the victim of coercion or duress by a former boyfriend, and that her fraud was the result of aberrant behavior. The court concluded that the facts did not warrant a departure for any of the reasons Carter suggested, but regardless it would not exercise its discretion to grant her a departure. Nothing the court said suggests that it erroneously thought it lacked discretion to depart, so we assume that the court recognized its authority. *United States v. Cureton,* 89 F.3d 469, 474–75 (7th Cir.1996); *United States v. Atkinson,* 259 F.3d 648, 653 (7th Cir.2001). We would therefore lack jurisdiction to review the court's refusal to depart exercise of that discretion, *see United States v. Johnson,* 289 F.3d 1034, 1043 (7th Cir. 2002), and an appeal on this basis would be frivolous.

Finally, counsel considers arguing that sentencing Carter to prison as a first-time offender violates Congress's command that "[t]he Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or otherwise serious offense." 28 U.S.C. § 994(j). This argument would be frivolous because we have held that the guidelines generally do reflect the appropriateness of withholding prison terms in less serious cases. *See United States v. Lueddeke,* 908 F.2d 230, 233 (7th Cir.1990).

For the foregoing reasons we GRANT counsel's motion to withdraw and DISMISS the appeal.