# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-3325

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

SHAWN R. WASHBURN,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 03:03CR0017RM—**Robert L. Miller, Jr.**, *Chief Judge.*

_____

ARGUED MARCH 29, 2004—DECIDED SEPTEMBER 9, 2004

_____

Before CUDAHY, ROVNER, and DIANE P. WOOD, *Circuit
Judges.*

ROVNER, *Circuit Judge.* Shawn R. Washburn pleaded
guilty to one count of possessing with intent to distribute
more than 50 grams of methamphetamine, 21 U.S.C.
§ 841(a)(1), pursuant to a conditional plea agreement.
Under the plea agreement, Washburn reserved his right to
challenge on appeal the district court's denial of his motion
to suppress evidence found during a search of his vehicle on
November 6, 2002. We uphold the district court's denial of
his motion.

The search of Washburn's vehicle occurred after police officers from Indiana and Ohio gathered information about a methamphetamine distribution ring from two different individuals who had agreed to assist the officers. One of the cooperating informants arranged a drug transaction for that day involving the delivery of ten pounds of methamphetamine from Elkhart, Indiana, to Defiance, Ohio. Officers knew from the informant that a Thomas Wright and several others planned to drive the methamphetamine to Defiance in a caravan of either two or three automobiles and procured a search warrant in anticipation of stopping the vehicles. After stopping Wright and the others before they reached Defiance, the officers found in the trunk of one of the cars a suitcase with ten, one-pound vacuum-sealed bags containing a substance that field-tested positive for methamphetamine. The police then took the individuals into custody.

Washburn's name surfaced for the first time during two separate interviews that the officers conducted with Wright and David Morgan, another member of the caravan. Both Wright and Morgan identified Washburn as the supplier of the methamphetamine. Morgan also admitted during his interview to his role in the drug transaction. He explained to the officers that he received the ten pounds of methamphetamine from Washburn, who, according to Morgan, had carried the drugs in a black bag that he kept between the seats of his car. Morgan described Washburn's car as a very nice, white Chevrolet "conversion" van with wood trim on the interior and graphics on the exterior.

Morgan then agreed to cooperate with the officers, and set up a drug transaction directly with Washburn later that evening. While being tape-recorded by the officers, Morgan called Washburn. During the conversation Morgan confirmed the success of that morning's ten-pound delivery to Ohio and arranged to pick up twelve more pounds of methamphetamine, ten for another delivery and two pounds, it seems, for himself. During a second tape-recorded conversa-

tion, Morgan and Washburn decided to meet at 7:00 p.m. that night in the parking lot of the Weston Plaza hotel in Elkhart.

That night at 7:00 p.m., officers observed a white conversion van with graphics on its exterior enter the parking lot of the Weston Plaza hotel, circle the building once, and stop in front of the entrance. The driver emerged from the van and went into the hotel. As he returned to the van several minutes later, two or three officers surrounded him with weapons drawn and ordered him to the ground. Washburn identified himself to the officers, and the officers obtained his car keys. Aided by flashlights and the bright lights of the parking lot, the officers were able to see, when peering into the van, both the wood trim in the interior and a black bag between two seats. The officers then asked Washburn if they could search the van, but he politely declined. He then agreed to wait in a police car.

Either just before the stop of Washburn or shortly thereafter, the police officers at the scene placed two calls. The first call confirmed that the license plate of the van was registered to Washburn. The second call requested the assistance of a canine unit to conduct a drug sniff of the van. The canine unit arrived by 8:25 p.m. at the latest. The dog alerted its handler to the presence of drugs near the seam where the passenger double doors and front passenger door open.

In response to the police dog's positive signal, one of the officers called a prosecutor and requested a search warrant for the van. A state judge in Elkhart signed the warrant at approximately 8:45 p.m. During the subsequent search, the officers found between two seats a black bag with twenty-four, vacuum-sealed packets each weighing one pound, like those seized earlier that day. The contents field-tested positive for methamphetamine. After this discovery, the police formally placed Washburn under arrest two hours after the initial stop.

Washburn was charged in federal court and moved to suppress the evidence found that night, arguing first that the search warrant was defective because (1) there was no probable cause to support it, (2) the warrant did not contain an "oath or affirmation," and (3) the state judge who authorized it was not neutral and detached. He also contended that the time that he was held before the search exceeded the length of time permissible for a brief investigatory stop. After holding a hearing on Washburn's motion to suppress, the district court concluded that the police officers had probable cause to search the van, and so, under the "automobile exception," the search was valid whether the officers had a warrant or not. The court reasoned that Morgan was sufficiently reliable because he claimed first-hand knowledge of the illegal activity, and his statements were against his penal interest and corroborated by subsequent events. Because the officers had probable cause, the court concluded, they could detain Washburn beyond the length of time permitted for an investigatory stop. Having based its decision on the automobile exception, the court did not decide whether the warrant was deficient. After filing a self-described "Amended Motion to Correct Error," which the district court denied, Washburn pleaded guilty.

On appeal, Washburn first argues that the district court erred in applying the automobile exception to validate the search of his van because his van had lost its mobility at the time of the stop. Washburn points out that he was not inside the vehicle when the officers approached him and that after the initial stop he did not even have access to his car keys. Washburn thus reasons that the officers had enough time to procure a warrant, and did in fact obtain one, so the automobile exception is not available as a basis for upholding the search.

The Supreme Court in *Caroll v. United States*, 267 U.S. 132, 153-56 (1925), recognized an automobile exception, allowing a warrantless search of a vehicle to be conducted so

long as there is probable cause to believe it contains contraband or evidence of illegal activity. *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999) (per curiam); *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam); *California v. Carney*, 471 U.S. 386, 390 (1985); *United States v. Huebner*, 356 F.3d 807, 813 n.2 (7th Cir. 2004); *United States v. Ledford*, 218 F.3d 684, 688 (7th Cir. 2000). The original premise for the automobile exception was that a vehicle's "ready mobility" made an "immediate intrusion" necessary to prevent the destruction of evidence. *Carney*, 471 U.S. at 390-92 (internal citations and quotations omitted); *see Labron*, 518 U.S. at 940. In *Carney*, however, the Supreme Court clarified that a second reason justified the exception even where an automobile is "not immediately mobile"—the lesser expectation of privacy in a vehicle. *Carney*, 471 U.S. at 392; *see Labron*, 518 U.S. at 940; *United States v. Matthews*, 32 F.3d 294, 299 (7th Cir. 1994).

With these two justifications in mind, Washburn's argument that his lack of accessibility to the van made inapplicable the automobile exception is misconceived. So long as Washburn's van was inherently, even if not immediately, mobile, the application of the automobile exception was still valid based on the diminished expectation of privacy in one's vehicle. *See Matthews*, 32 F.3d at 299; *United States v. Gallman*, 907 F.2d 639, 641 (7th Cir. 1990); *United States v. Brookins*, 345 F.3d 231, 237 n.7 (4th Cir. 2003); *United States v. Mercado*, 307 F.3d 1226, 1228-30 (10th Cir. 2002). And the van qualified as readily mobile; Washburn's lack of access to the vehicle did not defeat its inherently mobile status. *See Gallman*, 907 F.2d at 641.

To the extent that Washburn challenges the second justification for applying the automobile exception—asserting that he legitimately harbored a heightened expectation of privacy because his van was parked in a lot used by temporary residents of the hotel—his argument fails. We have always rejected the notion that a hotel occupant enjoys the

same expectation of privacy in his car in the parking lot of the hotel as he does in the room itself; the hotel parking lot is "readily accessible to the public and not generally thought of as a place normally used as a residence." *United States v. Foxworth*, 8 F.3d 540, 545 (7th Cir. 1993); *United States v. Markling*, 7 F.3d 1309, 1319 (7th Cir. 1993); *see also United States v. Diaz*, 25 F.3d 392, 396-97 (6th Cir. 1994); *United States v. Ludwig*, 10 F.3d 1523, 1526 (10th Cir. 1993). Neither Washburn's inaccessibility to his van nor its location in the hotel parking lot invalidates the district court's application of the automobile exception.

Washburn also argues that the district court should have concluded that Morgan's statements alone did not provide the officers with probable cause to search his van. Pointing out that Morgan cooperated with police in hopes of receiving some type of consideration for his help, Washburn insists that Morgan's confession was not really against his penal interest, and so, in his view, the indicia of reliability that normally accompanies such statements did not attach. He also questions the officers' reliance on Morgan because Morgan was a first-time informant whose information had never been tested for veracity.

We review a district court's determination of probable cause de novo and its findings of fact for clear error. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). Probable cause to search exists where there is a fair probability that an officer will find contraband or evidence of illegal activity at a specified location based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. McClinton*, 135 F.3d 1178, 1183 (7th Cir. 1998). Probable cause is a "fluid concept," *Ornelas*, 517 U.S. at 696, and when an informant is involved, it may turn upon the informant's reliability, basis for knowledge, and degree of detail, as well as the ability of the police to corroborate the information, *United States v. Johnson*, 289 F.3d 1034, 1038-39 (7th Cir. 2002).

In this case, the officers had probable cause to search the van, at the latest, within moments of placing Washburn in the back of patrol car. Morgan's inculpatory statements along with both Wright's corroboration of Washburn's identity and the officers' later corroboration of Morgan's information established probable cause despite Morgan's possible motive to seek a deal with prosecutors and his status as a first-time informant. Regardless whether Morgan ultimately provided officers with information about Washburn to benefit himself, he still implicated himself in a drug-trafficking crime with his confession, so his possible motive for confessing would not significantly lessen his statements' indicia of reliability. *See Molina ex. rel. Molina v. Cooper*, 325 F.3d 963, 970-71 (7th Cir. 2003). And officers were then able to test the reliability of Morgan's information as they watched the events that he predicted unfold. *See McClinton*, 135 F.3d at 1184. In keeping with Morgan's arrangements on the telephone, a white Chevrolet conversion van with graphics on its exterior arrived at the Weston Plaza hotel at 7:00 p.m., driven by a man who identified himself as Washburn. By peering into the van, police were able to see interior wood trim and a black bag between two seats, as Morgan had described. This proof of Morgan's "inside information" confirmed his reliability. *See Alabama v. White*, 496 U.S. 325, 332 (1990); *McClinton*, 135 F.3d at 1184. Furthermore, Morgan was not the sole source of the officers' information about Washburn; Wright had also told the officers in a separate interview that Washburn supplied the ten pounds of methamphetamine seized in Ohio. Taken together, Morgan's and Wright's statements and the officers' ability to independently corroborate the information provided them with probable cause to search Washburn's van. And if all this were not enough, we have held that a positive alert by a trained drug dog gives rise to probable cause to search a vehicle. *United States v. Limares*, 269 F.3d 794, 798 (7th Cir. 2001); *United States v. Thomas*, 87 F.3d 909, 912 (7th Cir. 1996).

Washburn additionally asserts that the district court should have determined that his two-hour detention before his formal arrest exceeded the reasonable length of time for an investigatory stop. But he fails to develop the argument, so it is waived. *See Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 706 n.4 (7th Cir. 2002). In any event, even if Washburn is correct that his detention was unreasonably long for an investigatory stop, we do not see how this point helps his case. Washburn identifies no evidence that was gathered as a result of his detention as opposed to that seized from the valid search of his van. And the officers were permitted to hold Washburn beyond the reasonable length of time for an investigatory search because they had more than reasonable suspicion that Washburn was engaged in criminal activity; they had probable cause to believe he was involved in the earlier drug transaction based on Morgan's confession and both Wright's and the officers' corroborations of those statements. *See United States v. Brown*, 366 F.3d 456, 458 (7th Cir. 2004).

Washburn next turns to the search warrant for the caravan of cars heading to Defiance, arguing that it was too vague and overbroad and that, consequently, evidence from the subsequent search of his van should have been suppressed as "fruit of the poisonous tree." But Washburn never established that the challenged search infringed any interest of his that "the Fourth Amendment was designed to protect." *Rakas v. Illinois*, 439 U.S. 128, 140 (1978). In trying to establish that the search did directly violate his Fourth Amendment rights, Washburn argues that he exhibited a subjective privacy interest in the suitcase containing the methamphetamine found in the trunk of one of the cars and that the officers knew the suitcase belonged to him. But Washburn's assertion about the officers' knowledge mischaracterizes their testimony at the suppression hearing. The officers stated that, to their knowledge, Washburn had "provided" Wright, Morgan, and the others

with the suitcase—a fact the officers could have learned only during the post-search interview with Morgan when Washburn's name first surfaced. *See United States v. Rem*, 984 F.2d 806, 811 (7th Cir. 1993) (when deciding whether defendant abandoned luggage, "the flow of information considered stops at the moment the police officer opened the suitcase"). It is frivolous to argue that under these circumstances Washburn had exhibited a subjective interest of privacy in the suitcase. *See United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2002). And Washburn's tendering of the suitcase to the others for delivery to another city in a different state does not even hint that he retained any control over it or had taken any precautions to maintain his supposed privacy interest in it. *See United States v. Elmore*, 304 F.3d 557, 562 (6th Cir. 2002) (whether defendant took precautions to maintain privacy is relevant in determining existence of reasonable expectation of privacy); *see also California v. Greenwood*, 486 U.S. 35, 39-41 (1988) (no expectation of privacy in trash left for third-party garbage collector).

Finally, as counsel for Washburn clarified at oral argument, he proposes affirming Washburn's conviction but granting a downward departure to no prison time as a remedy for what he sees as police misconduct. The alleged police misconduct consisted of the officers' possibly faulty estimation of the time at which they confirmed that the license plate of the van was registered to Washburn and at which the canine unit arrived at the Weston Plaza hotel. But even assuming that Washburn could establish that the officers' testimony was intentionally false, which would require overcoming the high amount of deference accorded to a district court's credibility determination, *United States v. Merritt*, 361 F.3d 1005, 1009-10 (7th Cir. 2004), we have serious doubts about whether police misconduct that did not have any effect on the nature of the offense or the individual offender would ever be a permissible ground for departure. *See Koon v. United States*, 518 U.S. 81, 96 (1996) (district

court should consider the objectives of the Guidelines when deciding to depart downward on an unlisted ground); *United States v. Guzman*, 236 F.3d 830, 834 (7th Cir. 2001). And, in any event, we have never found error in the failure of a district court to depart downward sua sponte. *See United States v. Olano*, 507 U.S. 725, 733-34 (1993); *United States v. Cruz-Velasco*, 224 F.3d 654, 663-64 (7th Cir. 2000).

Washburn has not presented a sufficient argument for overturning the district court's denial of his motion to suppress, so we AFFIRM its judgment.

A true Copy:

      Teste:

                    _____

                    *Clerk of the United States Court of Appeals for the Seventh Circuit*