In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-1914

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARNYELL SCOTT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 0072—**James B. Zagel**, *Judge.*

ARGUED JANUARY 8, 2008—DECIDED FEBRUARY 19, 2008

Before, FLAUM, RIPPLE, and MANION, *Circuit Judges.*

FLAUM, *Circuit Judge.* On October 22, 2004, based upon intercepted calls and surveillance of Defendant Darnyell Scott, Chicago Police Department officers stopped Scott and searched his vehicle, finding $7,400 in cash and approximately one kilogram of cocaine. Scott filed a motion to suppress this evidence, which the district court denied and Scott now appeals. Because we find that probable cause for the search existed and a warrant was not necessary, we affirm.

**I. Background**

As part of an investigation into drug trafficking and police corruption, a federal judge authorized officers to wiretap James Walker's telephone. Walker's telephone was wiretapped from approximately October 6, 2004 until December 4, 2004, during which time officers intercepted calls between Walker and Scott on October 19 - October 22.

Particularly relevant to this case is Scott's intercepted call to Walker on the evening of October 21. Scott concedes that this conversation concerned whether Walker could resuscitate a batch of marijuana in Scott's possession that had apparently gone stale and lost its intoxicating effect. During this call, Scott asked Walker, "is there a way you can take something and make it beautiful," to which Walker replied, "Depending how bad it is and the definition of bad." Scott then described that the marijuana's "color ain't nothing," with Walker responding that "when the color dead, it's over." After Scott went on to state how much marijuana he had ("probably about fifteen"), Walker said he would need to look at the marijuana, explaining that, "you might think the color might not be right, that might not really be it . . . I really gotta look at it, and I'll be able to tell you, . . . cause when I look at it I can tell you better than you explain it to me. . ." Walker then went on to state, "I got a couple of tricks that might be able to salvage, what you're talking about," and mentioned that this "trick" could take a couple days to work. Scott indicated he would split any profit from the marijuana "down the middle" with Walker. Walker said, "All I got to do is look at it, and then, we'll, we'll go to the lab." Defendant and Walker decided to meet the next day so that Walker could look at the marijuana, with Walker saying "let's put it together in the morning then baby," and Defendant replying, "ten, four."

The following day, on October 22, officers intercepted a call from Scott to Walker at 11:41 a.m. Scott said, "I'm a ready to do that, you said you already got that thing, so I'm a, just come to you." Walker replied, "yeah, yeah, I got one." About fifteen minutes later, Scott again contacted Walker, and Walker, in a series of communications, directed Scott to an address in Markham, Illinois, where the two were to meet. Although officers did not see Scott arrive at this location, they later realized, through their surveillance, that Scott had been directed to Walker's residence. At 12:40 p.m., officers observed Walker arriving at this same house.

At 12:41 p.m., officers intercepted a call between Walker and an unknown male, and officers understood this call to be about drug business. Walker told the unknown male, "I am making a move, real quick," and after speaking to the unknown male again at 1:36 p.m., told him, "dude ready, I'm a, I'm about to leave from where I'm at in about 10 minutes." The unknown male responded, "Mike gonna run that to you."

After about another fifteen minutes, at approximately 1:50 p.m., officers observed Walker and a person later identified as Scott leave the house in separate vehicles, traveling in tandem. A few minutes later, both Scott's Nissan Maxima and Walker's vehicle were observed pulling into a gas station. Scott was then seen approaching a trash dumpster on the gas station premises, before both Scott and Walker again drove off in separate vehicles.

Scott was then stopped at 2:06 p.m. by Chicago Police Department officers as part of this investigation. The officers approached Scott as he walked away from his vehicle to a sandwich shop. The officers identified Scott and requested permission to search his vehicle. Despite Scott's declination, the officers proceeded to search his vehicle, locating $7,400 in cash in the interior and a bag

of suspected cocaine in a speaker box in the trunk. The officers seized these items, but did not arrest Scott at that time, due to the ongoing investigation.

Scott was charged by indictment on March 25, 2005, with possession with intent to distribute more than 500 grams of a mixture containing cocaine, in violation of 21 U.S.C. § 841(a)(1). On May 19, 2005, Scott filed a motion to suppress the cocaine and money seized by the officers on October 22, 2004. At a hearing on June 16, 2005, the district court found that probable cause existed and denied Scott's motion to suppress, with the caveat that if the case went to trial and the district court heard the tapes of the intercepted calls, that Scott would be permitted to argue that the tone of the conversations indicated that probable cause was inapplicable. The case, however, did not go to trial. On January 20, 2006, Scott entered a conditional guilty plea, reserving his right to appeal the district court's motion to suppress. Scott was then sentenced to 48 months' imprisonment and 60 months' supervised release.

## II. Discussion

The sole issue raised by Scott on appeal is whether the district court erred in denying his motion to suppress. This Court "review[s] a district court's determination of probable cause de novo and its findings of fact for clear error." *United States v. Washburn*, 383 F.3d 638, 642 (7th Cir. 2004).

Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States,* 517 U.S. 690, 696 (1996). The Supreme Court has recognized that when probable cause exists to search an

automobile, officers are permitted to conduct a warrant-less search of "all parts of the vehicle in which contra-band or evidence could be concealed, including closed compartments and trunks." *United States v. Young,* 38 F.3d 338, 340 (7th Cir. 1994) (citing *Carroll v. United States*, 267 U.S. 132, 153-56 (1925); *California v. Acevedo*, 500 U.S. 565 (1991)). The question then, regarding proba-ble cause, is "if, given the totality of the circumstances, there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" in this case, in Scott's vehicle. *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)).

Scott concedes that the intercepted call between himself and Walker on October 21 made it probable that he possessed a batch of stale marijuana, but contends that officers did not have probable cause to believe that this marijuana was located in his vehicle when it was searched the following day. We disagree. In their con-versation on October 21, Scott and Walker agreed that "in the morning," Scott would bring the marijuana to Walker for him to see, at which point, if it could be resus-citated, it would have to be taken to the "lab." Officers therefore, had probable cause to believe that the mari-juana was in Scott's vehicle when he arrived at Walker's residence.

Scott argues that because there is no surveillance re-port of any officer observing him placing anything in his trunk while at Walker's residence, there was no prob-able cause that the marijuana was in his vehicle when it was searched. This fact alone however, is insufficient to negate probable cause. Based on the conversation the previous day, officers knew that Scott intended to show Walker the marijuana, at which point, if Walker was unable to resuscitate the marijuana, nothing would be done and Scott would presumably keep the marijuana. If however, the marijuana could be resuscitated, both

Scott and Walker would take it to the "lab" ("then, *we'll*, *we'll* go to the lab" (emphasis added)). This meant that a fair probability existed that the marijuana was in Scott's vehicle when he and Walker left Walker's residence. If the marijuana was unsalvageable, Scott presumably would have retained possession of the marijuana. Similarly, if the marijuana was to be taken to the lab, because both Scott and Walker would be going there, it was just as likely that Scott, rather than Walker, would transport the marijuana to the lab in his vehicle.

Probable cause continued to exist when Scott's vehicle was ultimately searched at 2:06 p.m. Although surveillance observed Scott approach a gas station dumpster after his vehicle had left Walker's residence, there was still a fair probability the marijuana remained in Scott's vehicle, due to the possibility that Scott was en route to the lab or that the stop at the dumpster was linked to the other drug deal between Walker and the unknown male. Therefore, the officers acted within their authority when they searched Scott's vehicle.

For these reasons, the district court properly denied Defendant's motion to suppress. Because we find that probable cause existed to search Defendant's vehicle for marijuana, we need not address any alternative basis for finding probable cause or whether the search and seizure was justified by reasonable suspicion.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Defendant's motion to suppress.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*