NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 8, 2008
Decided September 8, 2008

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 08-1165

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>*v.*<br><br>MICHAEL MIKULEWICZ,<br>*Defendant-Appellant.* | Appeal from the United States District Court for the Western District of Wisconsin.<br><br>No. 07-cr-089-jcs-1<br><br>John C. Shabaz,<br>*Judge.* |

**ORDER**

After Michael Mikulewicz moved to suppress drug evidence that police discovered while executing a state search warrant for his car, a magistrate judge conducted a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). When his motion was denied, Mikulewicz entered a conditional guilty plea to possession of methamphetamine with intent to distribute. He appeals, arguing that the search-warrant affidavit contained material misrepresentations and omissions and therefore any evidence found in his car should be

suppressed.  But a warrant is not required to search an automobile.  Investigators need only probable cause, which they had in spades.  Accordingly, we uphold the district court's ruling.

Mikulewicz owned and managed a strip club, the "Jack of Diamonds," which confidential sources told police served as a front for his methamphetamine dealing.  In January 2003 the local sheriff's department, the U.S. Attorney's Office, and the Wisconsin Department of Justice began a joint investigation of Mikulewicz's alleged illegal activities.  Then in March 2004 a second informant corroborated allegations of Mikulewicz's methamphetamine business, prompting investigators to stage two separate controlled buys, one from a dancer at the Jack of Diamonds and one from Mikulewicz's live-in girlfriend, Brandi Colegrove.

In January 2005, while the investigation was ongoing, Mikulewicz discovered that Colegrove, who also danced at the Jack of Diamonds, had broken into one of the gambling machines and stolen between $1,300 and $1,500 allegedly to support a methamphetamine habit.  Upon discovering the theft, Mikulewicz alerted the police, who arrested Colegrove.  She later agreed to make full restitution as part of a deferred adjudication.

Mikulewicz's decision to rat out his girlfriend may not have been his best judgment call.  On March 8, 2006, Colegrove and her mother, Beverly Colegrove, arrived at the sheriff's department and reported that Mikulewicz had been making nonconsensual audio and video recordings of Colegrove and others.  Investigator Austin Parenteau took Colegrove's initial report.  Colegrove had noticed in the house she shared with Mikulewicz a wire connected to a VCR, and when she turned on the VCR she was confronted with a video of herself.  When Colegrove investigated further, she found video and audio recordings made surreptitiously in the residence and at the Jack of Diamonds, as well as nonconsensual recordings of several of her telephone conversations.  Investigator Parenteau gave Colegrove a form to make a written statement, and she left the station with her mother.

Later that same day Colegrove and her mother returned to the station with Colegrove's handwritten statement in which she specified that the recordings contained images and audio of herself and others at her residence and at the Jack of Diamonds, in addition to images of cars parked in the driveway.  Meanwhile, Investigator Parenteau telephoned Agent James Ohm at the Wisconsin Department of Justice and filled him in on Colegrove's allegations.  Agent Ohm, who already was participating in the investigation of Mikulewicz for drug dealing, interviewed Colegrove and her mother by phone while they were at the station with Parentau.  Colegrove repeated her story during the recorded conversation and promised to return the following day.  She admitted stealing money from

Mikulewicz but insisted that she had not used drugs for four months. Colegrove also stated that Mikulewicz had used and dealt methamphetamine. She explained that he would go to "the city" and "bring back meth in large quantities and sell it up here at the Jack of Diamonds." Colegrove further elaborated that she "heard that he [was] still using and dealing to people including his dancers." Before departing the sheriff's office, Colegrove submitted a second written statement in which she reported: "Michael Mikulewicz . . . now is driving a Buick lesaber tan 4 door with minn. Licensen [*sic*] plates and works out of his truck. I have seen the guns in his trunk and have heard him say they were loaded." Colegrove's mother also submitted a written statement in which she asserted that she had seen the videos of Colegrove and had listened to the recordings of her daughter's phone conversations.

Agent Ohm prepared an affidavit in support of an application for a warrant to search Mikulewicz's home, business, and Buick LeSabre for items related to illegal wiretapping. A Wisconsin state-court judge issued the warrant on March 9, 2006. A search of Mikulewicz's residence revealed no wiretapping devices, though investigators confiscated numerous video tapes containing images from the Jack of Diamonds. Additionally, a search of the Jack of Diamonds uncovered video and audio recording equipment positioned throughout the club and numerous video tapes.

That same day, Mikulewicz was pulled over while driving his LeSabre and placed under arrest for illegal wiretapping. Investigators searched his car at the sheriff's department and found video and audio tapes, wiretapping equipment, and two tape recorders. Investigators also discovered what looked like evidence of drug use, at which point they stopped the search and obtained a second warrant to search the car for illegal narcotics. Ultimately they recovered slightly more than four grams of methamphetamine from the car and found four firearms in Mikulewicz's trunk, one of which was kept in a case that contained some of the methamphetamine.

In a three-count indictment, federal prosecutors charged Mikulewicz with maintaining the Jack of Diamonds for the purpose of distributing and using methamphetamine in violation of 21 U.S.C. § 856(a)(1), distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1), and possessing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Mikulewicz moved to suppress the evidence obtained in the LeSabre and the Jack of Diamonds, arguing that an evidentiary hearing was needed to determine whether the warrant was based on an affidavit containing material omissions and false statements.

A magistrate judge conducted a *Franks* hearing, and both Investigator Parenteau and Agent Ohm testified. Parenteau testified that he received Colegrove's report of surveillance

and wiretapping and then contacted Ohm. He further testified that he was present when Colegrove and her mother returned to the sheriff's office with Colegrove's first statement, and that he listened in on Ohm's telephone interview with Colegrove and her mother. Ohm testified that Mikulewicz had been under investigation for methamphetamine trafficking for some time and that, when he got the call from Parenteau, he was participating in that investigation. He confirmed that, when he interviewed Colegrove and her mother, Colegrove repeated what she had told Parenteau. According to Ohm, he learned during this interview that Colegrove had an outstanding theft charge, but he didn't include that information in this affidavit because the charge was still pending and he did not believe that it affected the veracity of her information. Ohm further testified that some of the information Colegrove provided had been corroborated by her mother. And Ohm explained that during the interview Colegrove admitted that she had used methamphetamine in the past, and so her allegations against Mikulewicz were, in Ohm's estimation, statements against her penal interest, and thus more reliable. Ohm confirmed that Colegrove had informed him that Mikulewicz worked out of, and kept guns in the trunk of his car, though he noted that at one point in her written statement she had misspelled "trunk" as "truck." Finally, he testified that Colegrove informed him during the telephone interview that, in addition to loaded guns, Mikulewicz also kept bags of money and video and cassette tapes in his vehicle.

After the *Franks* hearing the magistrate judge recommended that the district court deny Mikulewicz's motion to suppress. The magistrate judge recognized that, while there may have been reason to question Colegrove's motives, her allegations of illegal wiretapping and surveillance were corroborated by her mother's statements and the tapes themselves. And, he reasoned, this corroborating evidence was sufficient to establish probable cause. The magistrate judge explained that, because there was probable cause to search the car, the investigators' observations of illegal drugs in plain view gave them probable cause to search the rest of the car and seize the evidence. The district court adopted the recommendation of the magistrate judge and denied Mikulewicz's motion to suppress.

Mikulewicz then pleaded guilty to possession of methamphetamine with intent to distribute. In exchange the government dismissed the other two counts and agreed that Mikulewicz could appeal the denial of his suppression motion. The district court accepted the plea agreement and sentenced Mikulewicz to 64 months' imprisonment.

On appeal Mikulewicz argues that the district court erroneously denied his motion to suppress the evidence obtained from his LeSabre because, Mikulewicz insists, the affidavit underlying the search warrant contains materially false statements and omissions. He does not argue that all of the information available to the police would not have

constituted probable cause; instead, Mikulewicz contends that Agent Ohm's supporting affidavit, once stripped of the alleged falsehoods and corrected by adding in the alleged omissions, would not establish probable cause. We conclude, however, that Mikulewicz's exclusive focus on the *Franks* issue in his brief and at oral argument was misplaced.

The automobile exception to the warrant requirement provides that a warrant is not required to search a car. Instead, all that is needed is probable cause that the search will uncover contraband or evidence of a crime. *See Carroll v. United States*, 267 U.S. 132, 153-56 (1925)*; United States v. Hines*, 449 F.3d 808, 814 (7th Cir. 2006); *United States v. Pittman*, 411 F.3d 813, 816-17 (7th Cir. 2005). We can frame this question as whether this was a permissible *warrantless* search, and with that understanding we review the officers' probable cause determination de novo. *See United States v. McIntire*, 516 F.3d 576, 577-79 (7th Cir. 2008).

Probable cause to search a vehicle exists if, given the totality of the circumstances, a reasonably prudent person would believe that the vehicle contains contraband or evidence of a crime. *See United States v. Scott*, 516 F.3d 587, 589 (7th Cir. 2008). That standard was met in this case. Before Colegrove even walked into the sheriff's office, the police already knew from informants and their own controlled buys that Mikulewicz was dealing. Colegrove updated the previously available information and confirmed that, not only had other dancers informed her that Mikulewicz was still dealing methamphetamine, but he was driving to other cities to buy the methamphetamine in bulk. In fact, Colegrove said, Mikulewicz was conducting business out of the trunk of the LeSabre, where he kept bags of money and loaded guns. This evidence was more than sufficient to establish probable cause to search the LeSabre, and probable cause was all that the police needed. *See United States v. Seymour*, 519 F.3d 700, 713-14 (7th Cir. 2008) (holding that probable cause existed to search defendant's car where gun was seen in plain view during traffic stop and prior investigation had revealed defendant to be a drug dealer); *United States v. Washburn*, 383 F.3d 638, 642-43 (7th Cir. 2004) (holding that probable cause existed to search van for methamphetamine where two informants provided information that drugs were kept in van and defendant's actions corroborated informant's time line). Indeed, even the available information about Mikulewicz's nonconsensual audio surveillance and the presence of cassettes in the trunk would have allowed a warrantless search of his car. *See* 18 U.S.C. § 2511(1); Wis. Stat. § 968.31(1)(a). And given that the government did not bring charges related to the illegal surveillance and represented to the district court that it would not use any of the evidence obtained from Mikulewicz's residence or place of business, we can end our inquiry right here.

Because probable cause existed to search the car and thus the drug and gun evidence is admissible, we decline to address Mikulewicz's *Franks* argument and uphold the district court's ruling.  Accordingly, the judgment of conviction is AFFIRMED.