**UNITED STATES of America,**
**Appellee,**

v.

**Karzekel THOMAS, Justis Bosh, a/k/a Jeffrey A. Bosch, Desmond Burns, Carvin Loussaint, Khasim Marcelle, Defendants,**

**James L. Johnson and Ozem Thomas,**
**Defendants–Appellants.**

**Docket No. 00–1593(L).**

United States Court of Appeals,
Second Circuit.

Argued: Feb. 27, 2001.

Decided: Sept. 04, 2002.

John L. Smith, Assistant United States Attorney for the Eastern District of New York, Brooklyn, N.Y. (Alan Vinegrad, United States Attorney, and Cecil C. Scott, Assistant United States Attorney, on the brief), for Appellee.

Bernard H. Udell, Brooklyn, NY, for Appellant Johnson.

Richard Ware Levitt, New York, NY, for Appellant Thomas.

Before KEARSE, JACOBS, KEITH *, Circuit Judges.

JACOBS, Circuit Judge.

James Johnson and Ozem Thomas appeal from judgments of conviction and sentences entered following a jury trial in the United States District Court for the Eastern District of New York (Korman, *Ch.J.*). Defendants raise a number of appellate issues, but their primary argument is that the prosecutor denied them equal protection of the law by using peremptory challenges to strike prospective jurors Emma Franklin and Dorothy Campbell. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The defendants, who are African–American, timely objected during jury selection that the challenges to those jurors, also African–American, were discriminatory in violation of *Batson.* Magistrate Judge Chrein, who presided over the selection proceedings, denied the *Batson* claim. After trial, the defendants moved in the district court for a new trial on the claimed *Batson* error, but Chief Judge Korman ruled that the objection was forfeited because the defendants had failed to appeal the magistrate's *Batson* rulings immediately to the district judge, and because the defendants had declared themselves satisfied when, prior to the swearing of the jury, Judge Korman asked counsel whether the jury was satisfactory.

We agree with Judge Korman that the purposes of *Batson* are best served if appeals from *Batson* rulings made by a magistrate judge are taken immediately to the district judge; but we conclude that, as the law then stood, the *Batson* claim was not forfeited in this case. Defense counsel promptly and assiduously raised *Batson* before the magistrate judge during the jury selection process; the law imposed no clear obligation to seek immediate appeal of those rulings; and the jurors at issue had been discharged and replaced when the trial judge asked if the jury (as finally constituted) was satisfactory.

Reaching the merits of the *Batson* claim, we conclude that the findings are insufficient. Accordingly, we remand for supplemental findings pursuant to the procedure used in *United States v. Jacobson*, 15 F.3d 19, 21–22 (2d Cir.1994). Upon receipt of these findings, we will reconsider the sufficiency of the defendants' *Batson* claim as well as their other appellate arguments concerning the jury instructions, sufficiency of the evidence, and sentencing.

## BACKGROUND

Ozem Thomas and James Johnson were tried on numerous federal counts arising out of four robberies or attempted robberies in Brooklyn. Upon consent, Magistrate Judge Simon A. Chrein presided over jury selection.

During those proceedings, the government used its peremptory challenges to strike from the jury one Latino and four African–Americans of whom two—Emma Franklin and Dorothy Campbell—are the subject of the *Batson* challenges raised below and on appeal.

The government explained its strike of Ms. Franklin on the ground that her son had been convicted on a weapons charge and was in jail:

I would say this woman's child is incarcerated on weapons charges, and this

---

* Honorable Damon J. Keith, of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

case involves two particular defendants who face—at least with respect to Ozem Thomas—face multiple weapons charges, and the defendant Johnson also faces a weapons charge.

So, there is a real similarity between the predicament, in terms of the weapon charge, I expect in this case, which I don't expect in every case: That the defendants' mothers are going to be a significant presence during the course of the trial.

And knowing that, and knowing that a mother also faces—is going to be seeing mothers in the audience who also have children, their children are incarcerated, it's not a knee-jerk reaction just to the fact the child is incarcerated. But in this particular case, I expect the mothers to be a presence, and even to be witnesses in the case.

G.A. at 122–23. The magistrate credited this explanation and denied the *Batson* motion. But the defense renewed its attack when the government decided not to strike a white juror, Ruby Leureux, whose son also had been convicted of a weapons offense:

Ms. Leureux had the same situation [as Ms. Franklin]. She wasn't challenged on that basis by the government as a peremptory. It's exactly the same situation. She had a son who was arrested for a crime of robbery, I believe, with a weapon, and she is also a mother of a child. Her situation is exactly the same as Ms. Franklin's. However, the government challenged Ms. Franklin on that basis.

I'm arguing to the Court, on the basis of these challenges, they appear to be pretextual. And you can put aside that issue with [Ms. Franklin]. She doesn't have anything about her that would cause the government any pause of having her as a juror, other than her race.

She already served on a jury. Her answers were forthright, she had no problems of any kind. She didn't respond, to any of the questions that the Court asked, in terms of any problems any jurors may have.

*Id.* at 180–81. The magistrate denied the renewed *Batson* motion, stating that "[t]he record speaks for itself." *Id.* at 182.

As to the government's peremptory strike of Ms. Campbell, the prosecutor responded as follows to the *Batson* motion of the defense:

I thought the tone that [Ms. Campbell] took when she was answering many of the Court's questions evinced a flippancy, almost a kind of casual disregard for the proceedings.

G.A. at 176. Evidently, the magistrate judge did not share that reaction: "I can't say if that is true or not." *Id.* The magistrate observed:

One more thing about ... [Ms. Campbell]. She is not unique, she is one of several jurors, but she also was one of the people who forgot [to mention during general examination her] prior jury service.

*Id.* at 179. Later, the magistrate judge added that there was no perceptible pattern of discriminatory strikes, because the government waived opportunities for peremptory challenges when black jurors were seated:

[A]t the time the government exercised both of their waivers, there were three African–Americans at that time who were not challenged. In other words, I don't see a pattern any more than I[] see a pattern of challenging Hispanics.... Nor do I see a pattern in challenging only whites and Hispanics.

*Id.* at 179. In response, defense counsel asserted "that the challenge of Ms. Campbell, on the grounds that she was surly, is

merely a pretext. That she served on the other juries, she answered all the questions—." *Id.* at 179. The magistrate denied the *Batson* motion. *Id.* at 182.

. Upon completion of jury selection, the members of the venire who were not seated on the jury were excused. When the parties came before Chief Judge Korman, he asked whether there was "any reason why the jury should not be sworn." All counsel answered no, the jury was sworn, and trial began.

On October 27, 1999, the jury returned a verdict convicting Thomas and Johnson of conspiracy and robbery in violation of the Hobbs Act, 18 U.S.C. § 1951; related weapons offenses; and murder in the course of a robbery in violation of 18 U.S.C. § 924(j)(1). On July 14, 2000, Johnson was sentenced principally to 360 months' imprisonment, and on October 6, 2000, Thomas was sentenced principally to 510 months.

Seven months later, the defendants moved for a new trial, citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and alleging that the government improperly exercised its peremptory strikes based on race. The district court denied the motion, ruling that it had been forfeited because the defendants failed to present the issue to the district court before the jury was sworn.

Defendants' *Batson* appeal argues that: [1] the district court erred in concluding that the defendants forfeited their objections; and [2] on the merits, the magistrate judge failed to rule on the credibility of the government's proffered explanations

for striking Emma Franklin and Dorothy Campbell.

## I

### A. Waiver of Objections

■ This issue comes to us on the denial of a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, which we review for abuse of discretion. *See United States v. Monteleone*, 257 F.3d 210, 218 (2d Cir.2001).

■ It is well-settled that a defendant may default on a *Batson* challenge if he does not timely object. *Batson v. Kentucky*, 476 U.S. 79, 99, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *see also McCrory v. Henderson*, 82 F.3d 1243, 1249 (2d Cir. 1996) ("[T]he failure to object to the discriminatory use of peremptory challenges prior to the conclusion of jury selection waives the objection."). The question here is whether a *Batson* appeal is preserved when a timely, unsuccessful objection is made during jury selection conducted before a magistrate judge, but no review by the district judge is sought before the jury was sworn. The defendants argue that they objected immediately, at the time when relief was most readily available, and that they lacked notice as to the proper timing of any appeal of disputed *Batson* rulings to the district court. We agree.

■ Magistrate Chrein presided over jury selection upon oral consent from the defendants, the terms of which were plenary.[1] G.A. at 3–4. The law is clear that a defendant has the right to appeal a magistrate's *Batson* rulings to the district judge

---

1. The reference was proper. *See Peretz v. United States*, 501 U.S. 923, 935–36, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) (holding that a magistrate, rather than an Article III judge, can conduct voir dire in a felony case under 28 U.S.C. § 636(b)(3), so long as the defendant consents). A magistrate conducts jury selection "under the district court's total control and jurisdiction" with the "ultimate decision" to empanel a jury remaining with the district judge. *Id.* at 937, 111 S.Ct. 2661 (quoting *United States v. Raddatz*, 447 U.S. 667, 681, 683, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)).

before the jury is sworn. *See Peretz v. United States,* 501 U.S. 923, 939, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991); *United States v. Taylor,* 92 F.3d 1313, 1325 (2d Cir.1996). But we have never said that a defendant who timely objects at jury selection conducted by a magistrate judge waives the objection unless the right of appeal is immediately exercised.[2]

Prompt objections were made when they would do the most good, at the jury selection. The need for immediate appeal of disputed *Batson* rulings to the district court was not obvious, especially since [i] Ms. Franklin and Ms. Campbell had already been discharged when the parties appeared before the district judge to swear in the jury, and [ii] the district judge was not present during jury selection so he could not rely on his own observations to resolve *Batson* issues. *See McCrory,* 82 F.3d at 1248 ("Given the often subtle reasons for the exercise of peremptory challenges, a court's determination of whether a prosecutor has used them in a discriminatory fashion will often turn on the judge's observations of prospective jurors and the attorneys during voir dire and an assessment of their credibility.").

The government argues that the defendants were on notice that they should have appealed the disputed rulings to the district court before the jury was sworn because this "is an accepted practice in the Eastern District of New York." Govt. Br. at 22 (citing *Taylor,* 92 F.3d at 1324–27

(upholding district court's review of *Batson* rulings made by magistrate); *United States v. Somerstein,* 959 F.Supp. 592 (E.D.N.Y.1997) (reviewing *Batson* rulings made by magistrate)). Moreover, the government argues that "the district judge specifically invited review of the jury selection process." Govt. Br. at 23.

A practice of immediate appeals makes sense; but it is not clear that there is such a practice in the Eastern District of New York, that it was known to the defendants, or that anyone understood that it was enforced by waiver. And though Judge Korman asked counsel whether there was any reason why the seated jury should not be sworn, this inquiry may not have warned defense counsel to raise or lose objections to rulings made by the magistrate concerning jurors who had been discharged. Accordingly, we decline to hold that the defendants waived their *Batson* claim.[3]

As we previously observed, however, we agree with the district court that, when jury selection is performed by a magistrate judge, it makes sense and serves the policies of *Batson* (which protect the rights of prospective jurors as well as the rights of the parties) for parties to appeal adverse *Batson* rulings to the district judge as promptly as may be done. In the future, delay in advising the district judge of a *Batson* issue promptly, and in any event before the jury is sworn, may (depending on circumstances, the remedies available,

---

**2.** It appears from the text of our decision in *United States v. Alvarado,* 923 F.2d 253 (2d Cir.1991), that the defendant appealed a magistrate's *Batson* rulings directly to this Court.

**3.** We also reject the government's contention that the defendants waived the *Batson* claim by failing to argue during jury selection that the magistrate made insufficient credibility findings concerning the government's prof-

fered rationales. Defense counsel specifically identified Ms. Franklin and Ms. Campbell when arguing its *Batson* motion, and after the prosecutor proffered race-neutral explanations as to why it struck these jurors, defense counsel objected that these explanations were pretextual. This was sufficient to pursue the *Batson* claim. *See Galarza v. Keane,* 252 F.3d 630, 636–37 (2d Cir.2001).

and the discretion of the court) result in waiver.

### B. Jury Selection

Because we find that the defendants did not waive their *Batson* claims, we reach the merits of defendants' appellate arguments on that ground.

#### 1. Batson v. Kentucky

■ In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court reaffirmed that a defendant's right under the Equal Protection Clause of the United States Constitution is violated when prosecutors "challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Id.* at 89, 106 S.Ct. 1712. When a *Batson* challenge is lodged, the trial court must engage in "a three-step burden shifting analysis to determine whether a peremptory strike has been exercised in a racially discriminatory manner." *Barnes v. Anderson*, 202 F.3d 150, 155 (2d Cir.1999).

■ First, the court must ask "whether the movant has made a prima facie showing that the non-movant has exercised its peremptory strike on the basis of race," *id.* (internal quotation marks and alterations omitted); i.e., "that the circumstances raise an inference of racial discrimination." *United States v. Stavroulakis*, 952 F.2d 686, 696 (2d Cir.1992). Among the totality of relevant circumstances are the existence of a pattern of strikes against minority jurors and the non-movant's questions during voir dire. *Barnes*, 202 F.3d at 155.

Once an inference of discrimination has been raised, the burden shifts to the non-movant to provide a non-discriminatory reason for exercising the strike. *Barnes*, 202 F.3d at 155–56. The burden is not great:

> The second step of this process does not demand an explanation that is persuasive, or even plausible.... [T]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

*Purkett v. Elem*, 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam) (internal quotation marks omitted).

■ The third step of the analysis shifts the burden of persuasion to the movant, who must prove intentional or purposeful discrimination. *Barnes*, 202 F.3d at 155–56. At this stage, a court must "make an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *Galarza v. Keane*, 252 F.3d 630, 636 (2d Cir.2001) (quoting *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir.2000) (internal quotation marks omitted)). "We have repeatedly emphasized that a trial court may not deny a *Batson* motion without determining whether it credits the race-neutral explanations for the challenged peremptory strikes." *Galarza*, 252 F.3d at 636. "The credibility of an attorney offering a race-neutral explanation is at the very heart of [the *Batson*] analysis." *Barnes*, 202 F.3d at 157.

#### 2. Sufficiency of the Credibility Findings

■ At issue here is the third step of the *Batson* analysis: the sufficiency of the magistrate's rulings on the credibility of the proffered explanations.

##### a) Ms. Franklin

The prosecution explained its peremptory challenge as to Ms. Franklin on the race-neutral ground that [i] Ms. Franklin

had a son who had been arrested on weapons charges, [ii] Johnson and Thomas faced at least one weapons charge, and [iii] the presence of the defendants' mothers at trial could prove difficult for Ms. Franklin. The defendants objected to the strikes and then renewed that objection when Ruby Leureux was called to the jury box and not challenged, even though Ms. Leureux also had a son who had been convicted on a weapons offense. The defense argued that the two women—one black, the other white—were in "exactly the same" situation. G.A. at 180–81.

The government cited two distinctions. First, young Mr. Franklin was in prison, and young Mr. Leureux had been sentenced to probation. The second distinction was less straightforward. Ms. Franklin had said during voir dire that her son's experience with the criminal justice system probably saved his life and "wouldn't affect" her as a juror. G.A. at 118. Ms. Leureux, however, was "a little nervous about [] the possibility of sending someone else's son behind bars" (though she acknowledged she could vote to convict). On the cold record, these statements in voir dire appear to suggest that Ms. Franklin was confident she could avoid bias, and Ms. Leureux less so; nevertheless, the government maintained that Ms. Leureux simply had been more candid than Ms. Franklin:

> [T]he woman whose son had had a problem with the law for which he had gotten probation [Ms. Leureux] acknowledged that emotions of that type would—could come to bear when she deliberated, was deliberating about sons who were on trial, as these defendants are.

> And my judgment, gut judgment, was that one juror was being more candid about their emotions and how they would play into the case, and one was not. And one had a much different situation, where the son is actually incarcerated now, similar to the ones these defendant[s] are on trial for.

G.A. at 181–82.

The magistrate judge denied the application to recall Ms. Franklin without considering on the record the similar situation of Ms. Franklin and Ms. Leureux, and the government's gut-based distinction between them—circumstances that surely called for a credibility finding: "Support for the notion that there was purposeful discrimination in the peremptory challenge may lie in the similarity between the characteristics of jurors struck and jurors accepted. Where the principal difference between them is race, the credibility of the prosecutor's explanation is much weakened." *Jordan v. Lefevre*, 206 F.3d 196, 201 (2d Cir.2000) (finding that the credibility of the government's explanation for striking a black panelist on the basis that he was young and had no supervisory experience, was undermined by the failure to strike "a white panelist of the same age who had been in her job for only eight months and also had no supervisory experience"). Further support for the contention that there was discrimination is the government's preference for a juror who was apprehensive about putting someone's son behind bars, over a juror who said she would not be affected.

We are unable to resolve this *Batson* issue without findings by the magistrate judge as to the credibility of the government's "race-neutral" explanation.

b) Dorothy Campbell

The government explained that it challenged Ms. Campbell because "the tone that she took when she was answering many of the Court's questions evinced a flippancy, almost a kind of casual disregard for the proceedings." G.A. at 176. The magistrate "[could not] say if that

[was] true or not," *id.*, but remarked that Ms. Campbell was one of several jurors who had forgotten to mention at the outset that she had previously served on a jury. The magistrate emphasized that he saw no "pattern" of challenging African–Americans because the prosecutor waived its peremptory strikes on two occasions while three African–Americans were in the jury box. *Id.* at 179.

Defense counsel objected that [i] the explanation that Ms. Campbell was flippant was pretextual, and [ii] there was in fact a pattern of the government striking African–American women. (The government struck a third black woman in addition to Ms. Franklin and Ms. Campbell.) The magistrate made no further finding about Ms. Campbell before denying the *Batson* motion. G.A. at 182.

The ground cited by the government— flippancy—would have been as easily noticed by the magistrate judge as by the government; yet as to that the magistrate could not say. That does not mean that Ms. Campbell was earnest rather than flippant; subjective impressions will differ. But the circumstances called for a credibility finding. The finding of an absence of pattern strikes is useful, but the wrongful strike of Ms. Campbell alone would implicate *Batson*. Moreover, the open credibility issue on the strike of Ms. Franklin creates a relevant context, and might influence the finding as to whether there was a pattern.

A credibility finding as to the strike of Ms. Campbell is therefore needed, and if indicated a further finding as to pattern.

3.   Remedy

The defendants argue that a court's failure to make the requisite credibility findings is *per se* error and warrants a new trial. *See* Thomas Br. at 13 (citing *Barnes,* 202 F.3d 150). But a new trial is not always necessary. When a court has failed to make needed credibility findings as to each challenged strike "the appropriate course usually will be to remand for findings by the court as to the challenged strikes and an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *Barnes,* 202 F.3d at 156 (quoting *Alvarado,* 923 F.2d at 256) (internal quotation marks and alterations omitted). If, because of the passage of time, the magistrate judge can no longer make the findings necessary, he will so state, in which case a new trial may be warranted. *See id.*

Accordingly, we remand for credibility findings consistent with this opinion.

## CONCLUSION

For the foregoing reasons, this matter is remanded to the district court to supplement the record pursuant to the procedures described in *United States v. Jacobson,* 15 F.3d 19, 21–22 (2d Cir.1994). The district court is directed to solicit from Magistrate Chrein credibility findings regarding the prosecutor's proffered explanations for exercising peremptory challenges as to Emma Franklin and Dorothy Campbell. The magistrate judge should issue such findings within 45 days of this order.

The mandate shall issue forthwith and shall state that the parties are to inform the Clerk of this Court when the district court has issued its supplementation of the record in accordance with this order. Following such notification, jurisdiction of the appeal will be restored automatically to this Court, and the Clerk will reassign the appeal to this panel without the need for either party to file a new notice of appeal. After jurisdiction is restored, the Clerk shall set an expedited briefing schedule, and the parties may, if they wish, submit

supplemental letter briefs not to exceed twenty double-spaced pages on the impact of the supplemental findings on the *Batson* issues, including the "ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *Alvarado*, 923 F.2d at 256.

We will consider the other appellate issues when jurisdiction of this Court is restored.