In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 05-2603 & 05-2604

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DOUGLAS L. NITCH and
CURTIS PATTERSON,

*Defendants-Appellants.*

---

Appeals from the United States District Court
for the Southern District of Illinois.
No. 02-CR-40078-JPG—**J. Phil Gilbert**, *Judge.*

---

ARGUED MAY 5, 2006—DECIDED FEBRUARY 21, 2007

---

Before KANNE, WOOD, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* Douglas Nitch and Curtis Patterson were convicted by a jury of conspiracy to manufacture with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2. Nitch was sentenced to a term of 168 months in prison, and Patterson was sentenced to 120 months. Nitch appeals both his conviction and his sentence, claiming that there was an impermissible variance between the single conspiracy charged in the indictment and the multiple conspiracies proven at the trial, and that his sentence is unreasonable. Patterson challenges only his conviction, arguing that certain

physical evidence introduced at trial was the fruit of an unlawful search and should have been suppressed. For the reasons explained below, we affirm the convictions of both men, as well as Nitch's sentence.

**I**

This case involves a conspiracy to manufacture and distribute methamphetamine in the town of McLeansboro, Illinois. According to the testimony presented at trial, in 1999, while he was still a high school student, Nitch learned to manufacture methamphetamine. At the time, he was apparently one of only a few people in the town with this skill. Over the course of the next year or so, Nitch "cooked" methamphetamine for various people in town and instructed several others in the manufacturing process. As things developed, certain people were responsible for obtaining the raw ingredients necessary to produce the drug; they gave the ingredients to the cooks (such as Nitch) in exchange for a share of the finished product.

In either late 2000 or early 2001, Nitch left town for Missouri. His departure, however, did not disturb the methamphetamine business in McLeansboro, which continued without him. Later in 2001, Patterson joined the McLeansboro meth group. His home became a central location for the sale and use of the drugs they produced.

In May 2003, a federal grand jury indicted Nitch and 13 others on charges of conspiracy to manufacture methamphetamine and to possess it with intent to distribute. A fourth (and final) superceding indictment charged Nitch, Patterson, and two others with involvement in the conspiracy. Prior to trial, Patterson unsuccessfully moved to suppress methamphetamine and drug paraphernalia that was seized from a car in which he was a passenger.

At trial, in addition to the physical evidence against Patterson, prosecutors presented testimony from nine members of the conspiracy who earlier had reached plea agreements with the government. The jury convicted both men, and both now appeal.

**II**

**A**

We begin with Nitch's challenge to his conviction. Since Nitch did not raise his variance argument at trial, we review the jury's verdict only for plain error. Under this standard, Nitch must show that "(1) an error has occurred, (2) it was 'plain,' (3) it affected a substantial right of the defendant, and (4) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Duran*, 407 F.3d 828, 834 (7th Cir. 2005) (internal quotation marks and citations omitted); see generally *United States v. Olano*, 507 U.S. 725, 732-37 (1993) (discussing plain error review in detail).

A conspiracy variance claim is nothing more than "a challenge to the sufficiency of the evidence supporting the jury's finding that each defendant was a member of the same conspiracy." *United States v. Townsend*, 924 F.2d 1385, 1389 (7th Cir. 1991); see also *United States v. Williams*, 272 F.3d 845, 862 (7th Cir. 2001) (citing to *Townsend*'s explanation of a conspiracy variance claim). As a result, "[e]ven if the evidence arguably established multiple conspiracies, there is no material variance from an indictment charging a single conspiracy if a reasonable trier of fact could have found beyond a reasonable doubt the existence of the single conspiracy charged in the indictment." *Williams*, 272 F.3d at 862.

The thrust of Nitch's argument is there must have been more than one conspiracy in this case because he left

McLeansboro before Patterson became involved in drug activities there. Although Nitch acknowledges that numerous witnesses described their involvement in his methamphetamine operation as well as their work with Patterson individually, he emphasizes that no witness testified to seeing the two defendants in the same place at the same time. Nitch argues that this compels a finding that there were, at the very least, two separate conspiracies, one involving Patterson and another involving himself.

The government takes the position that no such conclusion is inevitable. It describes the conspiracy as consisting of "a large number of methamphetamine addicts in McLeansboro . . . [who] taught each other how to produce methamphetamine and helped each other get the supplies needed to make the drug" in order to accomplish the "shared goal" of "produc[ing] a steady supply of methamphetamine so as to feed their shared addictions." The government emphasizes that the evidence showed that Nitch was an early and important part of this conspiracy. The fact that Nitch and Patterson joined and participated in the conspiracy at different times, it concludes, is legally irrelevant.

We agree with the government that the evidence supported the jury's finding of the single conspiracy charged in the indictment. The testimony of the first government witness, Christopher Campbell, served to bridge the temporal and geographical gap between the participation of Nitch and that of Patterson. Campbell testified that he manufactured methamphetamine with Nitch in McLeansboro until Nitch left for Missouri. After Nitch's departure, Campbell moved to Missouri and lived with Nitch. Still later, Campbell returned to McLeansboro, met Patterson, and began supplying him with ingredients to manufacture the drug. Campbell testified that when he returned from Missouri, several of the same people who

were involved with the manufacture and distribution of methamphetamine when Nitch was in McLeansboro had continued their activities with Patterson.

"To join a conspiracy . . . is to join an agreement, rather than a group." *Townsend*, 924 F.2d at 1390. Thus, the government was not required to show that Nitch and Patterson met with one another or even were acquainted with each other; rather, the government needed only to prove that Nitch joined the agreement alleged. *Id.* at 1389. Based on our review of the evidence, we have little trouble concluding that a reasonable juror could have found beyond a reasonable doubt that there was a single multi-year conspiracy to manufacture methamphetamine in McLeansboro, in which both Nitch and Patterson participated.

**B**

Nitch next challenges his sentence, contending that the district court did not adequately explain its sentencing decision and, in particular, failed properly to address the sentencing factors listed in 18 U.S.C. § 3553(a).

At sentencing, Nitch's counsel urged the court "to sentence the defendant to the minimum sentence which it can find," emphasizing that in the five years since he committed the crime Nitch had held down a job and started a family. Nitch's lawyer did not, however, specifically refer to any of the factors set forth in § 3553(a). The government argued for a sentence at the top of the advisory Guidelines range, pointing out, among other things, that Nitch had twice tested positive for marijuana use while out on bail.

In explaining its decision to sentence Nitch to 168 months, the district court stated only:

> Mr. Nitch, I sentenced you to 14 years. It was not the top of the guideline, not at the bottom. You messed up when you were out on bond and that affected you. The jury found you guilty beyond a reasonable doubt, and the jury believed, based upon the testimony, that you were involved in more than you believed you were involved in. And I know you got started at an early age, young age in this, and I know you tried to get out, but the law is the law. And you knew better.

Nitch contends that this explanation of his sentence was inadequate and renders his sentence unreasonable.

Under the law of this circuit, a sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness. *United States v. Gama-Gonzalez*, 469 F.3d 1109, 1110-11 (7th Cir. 2006); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). "The defendant can rebut this presumption only by demonstrating that his or her sentence is unreasonable when measured against the factors set forth in § 3553(a)." *Mykytiuk*, 415 F.3d at 608. A sentencing judge is not required to "discuss the application of the statutory factors to the defendant [ ] in checklist fashion," but rather must only provide "an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant." *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005).

Although Nitch makes passing reference to several of the factors listed in § 3553(a), the only argument he develops is that the district court did not give sufficient consideration to his "history and characteristics," in particular, the fact that he became involved with methamphetamine at a young age and that he left McLeansboro to escape involvement with methamphetamine. But the record shows otherwise. It is apparent from the district

court's statement that "I know you got started at an early age, young age in this, and I know you tried to get out," that the court did consider Nitch's history and characteristics, including his youth. The court obviously was not persuaded, however, that when weighed against other evidence—such as Nitch's continued drug use—this factor alone merited a lower sentence.

We recognize that the Supreme Court has issued a writ of certiorari to determine whether presumptions like the one adopted in *Mykytiuk* are consistent with *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Rita*, No. 05-4674, 2006 WL 1144508 (4th Cir. May 1, 2006), cert. granted, 75 U.S.L.W. 3246 (U.S. Nov. 3, 2006) (No. 06-5754). We have therefore also assessed the reasonableness of Nitch's sentence without applying any presumptions. Even from that perspective, we cannot say that the district court's choice was unreasonable. As the district court noted, Nitch continued to use drugs while he was out on bond, and he was involved in a relatively large conspiracy. A significant sentence (as 168 months certainly is) cannot be called unreasonable, even taking into account Nitch's age at the time of his criminal activities.

## III

Patterson's conviction was based in part on evidence that was seized from a car in which he was a passenger. Patterson moved unsuccessfully to suppress this evidence, which he claimed was the fruit of an unlawful search— unlawful because the police officer who made the stop lacked reasonable suspicion. He now renews his challenge to the suppression ruling.

On April 5, 2003, a police officer in Morganfield, Kentucky, was flagged down in a Wal-Mart parking lot by a

store employee. The employee informed the officer that two individuals had just purchased four boxes of Sudafed, an over-the-counter nasal decongestant whose active ingredient, pseudoephedrine, is used to make methamphetamine. After the employee identified the car, which was still in the lot, the officer stopped the vehicle. A subsequent search turned up several bags of methamphetamine as well as drug paraphernalia.

After Patterson and the driver of the car were indicted in Kentucky state court on drug charges, they successfully moved to suppress the evidence seized from the car as the fruit of an unlawful search. They were not so lucky in this federal case. Here, based on the same facts, the district court refused to suppress, reasoning that Patterson lacked standing to challenge the evidence because he was only a passenger in the car and therefore lacked any reasonable expectation of privacy with regards to the vehicle's contents. See *Rakas v. Illinois*, 439 U.S. 128, 134 (1978); *United States v. Washburn*, 383 F.3d 638, 643 (7th Cir. 2004). Patterson argues that this was error.

Although Patterson obviously suffered enough injury in fact from the search to permit him to challenge the action of the police, see *Minnesota v. Carter*, 525 U.S. 83, 887-88 (1998); *Rakas*, 439 U.S. at 140, and his injury is redressable, we nevertheless find it unnecessary to consider whether his Fourth Amendment rights were violated. If there was any error in the admission of this evidence, it was harmless. The record contains ample testimonial evidence connecting Patterson to the charged conspiracy. This evidence alone was sufficient to convict Nitch. We thus have no doubt that the jury would have reached the same conclusion regarding Patterson's participation in the conspiracy even without physical evidence of his possession of drugs.

## IV

We AFFIRM the judgments of the district court in both Nitch's and Patterson's cases.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*