**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 18, 2007
Decided April 25, 2007

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-2521

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 04 CR 30095 |
| CHRISTOPHER B. TAYLOR, *Defendant-Appellant.* | David R. Herndon, *Judge.* |

## O R D E R

Christopher Taylor was found guilty by a jury of one count of distributing crack and one count of possessing crack with intent to distribute, both violations of 21 U.S.C. § 841(a)(1). He was sentenced as a career offender, U.S.S.G. § 4B1.1, to a total of 300 months' imprisonment, in the middle of his guidelines range. He filed a notice of appeal, but his appointed counsel now seeks to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he is unable to discern a nonfrivolous issue to pursue. Because counsel's supporting brief is facially adequate and Taylor has not responded to his attorney's motion, *see* Cir. R. 51(b), we review only the potential issues that counsel has identified. *See United States v. Tabb*, 125 F.3d 583, 584 (7th Cir. 1997) (per curiam).

In 2003, Tina Whittenburg was arrested for dealing crack in Alton, Illinois, and agreed to cooperate with members of a Drug Enforcement Administration task force. At trial she testified that prior to her arrest she had purchased crack-- usually half-ounce or one-ounce quantities--from Taylor at least fifty times. Whittenburg recounted that she arranged with Taylor by telephone to buy a half ounce from him on September 10, 2003, after which the task-force agents gave her $500, searched her to ensure that she did not possess any contraband or other money and watched her meet with Taylor in a nightclub parking lot. Whittenburg explained that, afterwards, when she turned over the crack to a DEA agent, she realized that it was only half the amount for which she paid. She called Taylor to complain of the shortage and arranged to meet him a second time. She testified that agents also watched this meeting, during which Taylor slipped her an additional quarter ounce of crack as they stood in a McDonald's parking lot.

Whittenburg also testified that just over four months later she called Taylor on behalf of her brother who wanted to buy a quarter ounce of crack. This was not a controlled buy; Whittenburg admitted that she did not tell the DEA about this transaction. She explained that Taylor was to meet her brother at the Belle Manor housing project on January 22, 2004, but the transaction never transpired.

Another witness, Alton police officer David Hayes, explained why. Hayes testified that on that day he passed the housing project and saw Taylor waiting there in his car with the engine running. Hayes knew Taylor, and also knew that he did not live at Belle Manor. Hayes parked his car and approached Taylor to investigate whether he was violating an ordinance that prohibits nonresidents from loitering on Belle Manor property; the officer also observed that the front license plate was missing from Taylor's car. When Taylor admitted he was not there to visit a Belle Manor resident, Hayes informed him that he was trespassing and added that he was going to issue a citation for the missing license plate. Hayes, though, smelled marijuana as he was issuing the citation, and when Taylor was asked about the smell, he admitted that he had some marijuana but "threw it down" when he saw Hayes' squad car. Hayes testified that after Taylor complied with his request to step out of the car, Hayes spotted marijuana in plain view on the floorboard. Hayes then placed Taylor under arrest, searched him, and discovered 5.9 grams of crack, $799 in cash, and three small baggies containing marijuana.

After hearing the testimony of Whittenburg and Hayes, along with several other Government witnesses, the jury found Taylor guilty. The probation officer concluded that Taylor qualified as a career offender, U.S.S.G. § 4B1.1, and in the presentence report recommended a guidelines imprisonment range of 262 to 327 months. The district court sentenced Taylor to 300 months' imprisonment on each count to run concurrently.

In the brief supporting his motion to withdraw, counsel identifies nine potential arguments but concludes that all of them would be frivolous. First, counsel considers whether Taylor could challenge the denial of his motion to suppress the evidence and statements stemming from his run-in with Officer Hayes on January 22, 2004. Before the district court Taylor argued that he reasonably believed he was under arrest from the outset of the encounter because Hayes informed him that he was trespassing and because other officers responding to Hayes' call for backup positioned themselves such that Taylor could not drive away. Taylor argued that Hayes' question about the odor of marijuana coming from his car constituted custodial interrogation without benefit of the *Miranda* warnings and tainted the evidence later discovered. But the district court rejected Taylor's theory, reasoning that he was lawfully detained while Hayes wrote him a ticket for the missing license plate, after which he would have been free to go had he not chosen to voluntarily answer Hayes' question, thereby "deliver[ing] himself up to [the officers] by presenting probable cause." R.59 at 199. We agree with counsel that it would be frivolous for Taylor to challenge this conclusion on appeal. Taylor's subjective belief that he was under arrest during the encounter is irrelevant. *See A.M. v. Butler*, 360 F.3d 787, 796 (7th Cir. 2004) (citing *Stansbury v. California*, 511 U.S. 318, 323 (1994)). His detention was a routine traffic stop, which does not create the sort of custody that requires *Miranda* warnings. *See Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). And Hayes was entitled to ask Taylor about the smell of marijuana coming from his car even though that question was not related to the original purpose of the stop. *See Ohio v. Robinette*, 519 U.S. 33, 38 (1996); *United States v. Childs*, 277 F.3d 947, 949 (7th Cir. 2002) (*en banc*). Miranda warnings were not required until Taylor was taken into custody, *Stansbury v. California*, 511 U.S. 318, 323 (1994), and Taylor was not in custody when he responded to Hayes' question by admitting that he possessed marijuana.

Second, counsel considers whether Taylor could argue that the evidence adduced at trial was insufficient to support the jury's verdicts. To succeed in this argument, Taylor would need to convince us that no rational trier of fact could have found the essential elements of the charged offenses beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Sanapaw*, 366 F.3d 492, 495-96 (7th Cir. 2004).

As to the distribution count, Taylor stipulated at trial that the substance Whittenburg delivered to the DEA on September 10, 2003, was crack, leaving the Government to prove only that the drug came from Taylor. *See United States v. Hatchett*, 245 F.3d 625, 631 (7th Cir. 2001). Whittenburg testified that she eventually got the 12.8 grams of crack from Taylor after giving him $500. It would be frivolous for Taylor to argue in the face of this testimony that it was irrational for the jury to find him guilty of distributing crack. *See United States v. Payton*, 328 F.3d 910, 911 (7th Cir. 2003) (rejecting sufficiency challenge based on trial

testimony of single witness); *Kines v. Godinez*, 7 F.3d 674, 678 (7th Cir. 1993) ("[A] single witness can suffice to prove guilt beyond a reasonable doubt.").

With respect to the other count, the Government had to prove that Taylor knowingly possessed crack with intent to distribute. *See United States v. Orozco-Vasquez*, 469 F.3d 1101, 1106 (7th Cir. 2006). Taylor conceded in his closing argument that the Government had proved that he possessed 5.9 grams of crack when he was arrested on January 22, 2004 (it would have been difficult to argue otherwise given that the police found the drugs in his coat pocket while searching him incident to arrest). He argued, however, that the Government never established his intent to distribute the crack. We agree with counsel that this contention would be frivolous. A drug agent testified that 5.9 grams is a distributable quantity of crack with a street value of between $1000 and $1500, and that the $799 that Taylor was carrying with the crack was consistent with the profile of a street-level dealer. Whittenburg's testimony is even more damaging to Taylor's defensive theory: she said that Taylor went to the Belle Manor parking lot after she asked him to sell her brother a quarter ounce (7.1 grams) of crack.

Third, counsel considers whether Taylor could challenge his convictions on the ground that the district court prejudiced the jury by instructing in its final charge that the jury could consider *Taylor's* prior convictions in evaluating *his* credibility as a witness. But Taylor had not testified, and no evidence was adduced about his prior convictions. What the court meant to say was that the jury could consider *Whittenburg's* prior convictions in evaluating *her* credibility. Taylor brought the error to the court's attention, and suggested through counsel that the court "could correct it by saying that . . . a witness has been convicted of a crime." The judge promptly did so. The court explained its mistake to the jurors, noting that they had not heard any evidence that Taylor was convicted of a crime and reminding them that they should not consider at all the fact that Taylor did not testify. Although Taylor later argued at sentencing (where he appeared pro se) that he was prejudiced by the mistake, we note that his counsel's apparent satisfaction with the correction in all likelihood constituted a waiver that is binding upon Taylor. *See New York v. Hill*, 528 U.S. 110, 114-15 (2000); *United States v. Johnson*, 223 F.3d 665, 670 (7th Cir. 2000). The argument would be frivolous, though, even if appellate review remains available. We would ask whether the jury instructions, taken "in the light most favorable to the government" and "viewed as a whole, address the issues fairly and adequately." *United States v. Collins*, 223 F.3d 502, 507 (7th Cir. 2000) (internal quotation marks and citation omitted). Even if the instruction was erroneous, Taylor would have to establish actual prejudice to win reversal. *See United States v. Aldaco*, 201 F.3d 979, 990 (7th Cir. 2000). We believe it would be frivolous for him to attempt to do so because the judge's prompt and thorough explanation rectified his unfortunate mistake.

Fourth, counsel evaluated Taylor's contention that he did not knowingly waive his Fifth Amendment right to testify at trial. The district court conducted an evidentiary hearing on this issue, and both of Taylor's trial attorneys testified that they told him that he alone had to decide whether to testify. Taylor, they said, decided not to testify after numerous discussions concerning the pros and cons. Based on this testimony the district court concluded that Taylor's argument was a "fraud" and an "obstruction of justice." R.274 at 59. We would not conclude that the district court committed clear error in choosing to believe the lawyers instead of Taylor, and thus we agree with counsel that it would be frivolous to press the matter on appeal. *See, e.g.*, *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985); *United States v. Marty*, 450 F.3d 687, 690 (7th Cir. 2006).

Fifth, counsel considers whether Taylor could argue that the district court erred in refusing to appoint another lawyer for him midway through sentencing after he had elected to proceed pro se. By that point Taylor had been represented by no fewer than seven attorneys, six of them appointed. After Taylor demanded that his trial counsel be "fired," the court appointed a public defender to represent Taylor at sentencing, but less then two months later Taylor filed the first of a flurry of motions to remove him. R.160. At its first hearing on that matter, the district court told Taylor: "[Y]ou've been through too many lawyers. This is . . . just one more attempt to manipulate the system." R.213 at 15. The court warned Taylor, "I can take him off the case if you want, but it simply means you're going to go Pro Se from this point out. . . . I'm through appointing lawyers for you." *Id.* Taylor elected to withdraw the motion because, he said, he did not have access to law books. Nevertheless, he continued to file motions seeking to remove counsel until finally, after a second hearing, the district court accepted Taylor's waiver of the right to counsel, terminated his lawyer and allowed him to proceed with sentencing pro se.

During the first half of the sentencing hearing, Taylor represented himself vigorously, presenting a number of arguments, cross-examining witnesses, and, according to the district judge, displaying near "complete" recall of the record and doing a "fine job." R.274 at 92, 102. But midway through the hearing, Taylor had an apparent change of heart, and asked the court to appoint counsel because, in his view, the judge was evincing "prejudice and bias" against him and he did not feel competent to finish the hearing. *Id.* at 91. The judge denied the motion and proceeded to address the seven objections to the presentence report that Taylor had filed. Although Taylor was given an opportunity to comment on each objection, he repeatedly insisted that he did not feel competent to continue. At one point Taylor demanded a competency evaluation after announcing that he was hearing voices in his head; the judge replied that he did not "believe that for one minute" and denied Taylor's request. *Id.* at 109. The district court denied all of Taylor's objections, which raised questions already resolved by the jury's verdicts. As the district judge wryly noted, Taylor was sufficiently restored to lucidity by the time of allocution

and managed to speak at length while displaying considerable command of the law and facts pertaining to his case.

Against this backdrop, we agree with counsel that it would be frivolous for Taylor to challenge on appeal the denial of his oral motion for appointment of counsel. We are confident that Taylor's decision to waive counsel and proceed pro se was knowing and intelligent. He was warned by the court that if he removed his seventh attorney he would have to go it alone, yet he persisted, and in a later filing told the court, "[T]his defendant knows that he is ill-equipped to defend himself . . . but feels that being defended by Mr. Kavanaugh or his office is worse." R.255 at 2. Although Taylor changed his mind during the sentencing hearing, the district court had discretion at that time to balance Taylor's interests "against the potential disruption of the proceedings already in progress." *United States v. Kosmel*, 272 F.3d 501, 505-06 (7th Cir. 2001). Accommodating Taylor's request--as the district judge noted--would have required continuing the proceedings for an extensive period of time, and it would be frivolous to challenge the court's refusal to do so. A defendant may not use his Sixth Amendment right to counsel "to play a cat and mouse game with the court, or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel." *United States v. Murphy*, 469 F.3d 1130, 1135 (7th Cir. 2006) (quotation marks and citation omitted). It appears that Taylor attempted to do just that during the sentencing hearing and indeed throughout the proceedings before the district court.

Sixth, counsel briefly considers whether Taylor could argue that his prison sentence is unreasonable. Counsel concludes that such an argument would be frivolous because the 300-month term, which falls within the properly calculated guidelines range, is presumptively reasonable and counsel can identify no basis to rebut this presumption. *See, e.g.*, *United States v. Gama-Gonzalez*, 469 F.3d 1109, 1110 (7th Cir. 2006); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). Although the Supreme Court recently granted a writ of certiorari to consider whether it is consistent with *United States v. Booker*, 543 U.S. 220 (2005), to afford a presumption of reasonableness to a sentence within the guidelines range, *see United States v. Rita*, No. 05-4674, 177 F. App'x 357 (4th Cir. May 1, 2006), *cert. granted*, 127 S. Ct. 551 (U.S. Nov. 3, 2006) (No. 06-5754), the resolution of that question would not affect our conclusion that any challenge to the term imposed in this case would be frivolous. The district court, as required, considered the relevant factors under 18 U.S.C. § 3553(a) and identified those having a significant effect on the choice of sentence. *See United States v. Nitch*, 477 F.3d 933, 937 (7th Cir. 2007); *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). For example, the court noted that crack dealing is a serious crime because crack is highly destructive to its consumers. The court also evaluated Taylor's criminal history, particularly his history of violent crime, and observed that rarely had he seen someone who was "so

incorrigible, so antisocial, and dangerous to his community"; the needs for specific deterrence and to protect the public both suggested to the court that a long sentence was appropriate. R.274 at 122. The court also stated that the guidelines factored heavily into its decision: had the judge made the decision on "gut instinct," he said, he would have sentenced Taylor to the statutory maximum of 40 years. R.274 at 138. We thus agree with counsel that it would be frivolous for Taylor to argue that his sentence is unreasonable.

The last three potential arguments considered by counsel require little discussion. Counsel correctly observes that Taylor's desire to challenge the district court's subject-matter jurisdiction is patently frivolous, as is his proposal to argue here that he should not have been tried by an all-white jury even though he used his own peremptory strikes to eliminate all four African-American members of the venire and the prosecution voiced no opposition. *See Aki-Khuam v. Davis*, 339 F.3d 521, 526 (7th Cir. 2003) (requiring, as element of prima facie *Batson* case, that the *adversary* of party exercising peremptory challenges oppose the removals); *United States v. Thomas*, 303 F.3d 138, 144 (2d Cir. 2002) (same); *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 561 (5th Cir. 2001) (same); *Davis v. Baltimore Gas & Elec. Co.*, 160 F.3d 1023, 1026 (4th Cir. 1998) (same). Finally, we are in agreement with counsel that if Taylor wishes to argue about the performance of the various lawyers who assisted him at trial, he would be better served bringing that claim through a collateral proceeding under 28 U.S.C. § 2255. *See, e.g.*, *United States v. Parker*, 469 F.3d 1074, 1075 n.1 (7th Cir. 2006); *United States v. Davenport*, 986 F.2d 1047, 1050 (7th Cir. 1993) ("[A] defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose.").

Counsel's motion to withdraw is granted, and the appeal is dismissed.